# BLACKMER & POST PIPE COMPANY, Respondent, v. MOBILE & OHIO RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, February 23, 1909.

1. **COMMON CARRIERS: Connecting Carriers: Contract for Through Carriage.** Where an original carrier charged a through rate to destination for a shipment over its own and connecting lines, and no point was designated in the contract to which it should carry, but at the foot of the receipts the destination was shown to be at the end of the entire route, it was a contract of through carriage. [See Blackmer & Post Pipe Co. v. Mobile & Ohio Railroad Company, *infra*, 479.]

2. ——: ——: **Verbal Contract: Bill of Lading.** All anterior verbal agreements with a common carrier concerning a shipment are merged into the bill of lading issued by the carrier for the shipment.

3. ——: ——: **Contract for Through Carriage: Limiting Liability: Consideration.** Where an original carrier issued a through contract for shipment over its own and connecting lines, it was liable for breakage occurring anywhere on the route whether from negligence or otherwise, notwithstanding a clause in the contract limiting its liability for breakage, where there was no consideration for such restriction, such as a reduced freight rate.

4. ———: ———: ———: ———: ———: Negligence. And such carrier would be liable for *negligent* breakage anywhere on the route, notwithstanding a reduced freight rate.

5. ———: ———: ———: ———: Joining Carriers as Defendants. But where a shipper sued the original and connecting carriers for damage to goods in shipment, alleging the damage was caused through negligence, he was obliged to prove, in order to recover, that the loss was due to negligence and to prove which of the carriers negligently caused the loss.

6. ———: ———: ———: ———: Agency. In an action against an initial carrier by a shipper for damage to goods shipped, an instruction exonerating the initial carrier if the goods were damaged by the negligence of certain other carriers was erroneous where such other carriers were shown to be the agents of the initial carrier.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

REVERSED AND REMANDED.

*R. P. & C. B. Williams* for appellant.

(1) Section 5222, Revised Statutes 1899, as amended in 1905, does not preclude the shipper and carrier from entering into a contract at the time of the receipt of goods which are destined to a point on a connecting line, limiting the duty and obligation of the carrier for transportation over its own route; and where the contract so provides the initial carrier cannot be held for the negligence of the connecting carrier, and the provisions of the bill of lading which exempts the initial carrier from the negligence of the connecting carrier will operate in favor of initial carrier in a suit by the shipper. Grain Co. v. Railroad, 176 Mo. 480; Door Company v. Railroad, 177 Mo. 641; McCann v. Eddy, 133 Mo. 59; Dimmitt v. Railroad, 107 Mo. 475; Ingmann v. Railroad, 116 Mo. App. 139; Bank v. Railroad, 119 Mo. App. 1; Milling Co. v. Railroad, 127 Mo. App. 80. (2) The court should have given the peremptory instructions requested by this defendant at the close of the plaintiff's evidence, as there was no evidence

which showed or tended to show that the sewer-pipe was damaged while in the possession of this defendant. Numo v. Railroad, 105 Mo. App. 540; Winter v. Railroad, 56 Mo. App. 282; Patterson v. Railroad, 56 Mo. App. 657. (3) Refused instructions 8 and 11, under the facts in this case, ought to have been given. The bill of lading provides that the railroad shall not be liable for breakage. The proof shows the damages claimed are for breakage; the burden then shifts to plaintiff to show that the pipe was broken by reason of the negligence of this defendant. 4 Elliott on Railroads, sec. 1516; Rand v. Railroad, 60 Mo. 199; Davis v. Railroad, 87 Mo. 340; Witting v. Railroad, 101 Mo. 31; 5 Hutchinson on Carriers, sec. 1355; Anderson v. Railroad, 93 Mo. App. 677; Eaton v. Railroad, 125 Mo. App. 225; Hurst v. Railroad, 117 Mo. App. 35; Flynn v. Railroad, 43 Mo. App. 424. (4) The court improperly allowed the plaintiff to introduce evidence as to the custom which existed in New Orleans in presenting claims of this kind to the railroad when there was no proof that this defendant had any knowledge of such custom; and for the further reason, that no custom of this kind had been pleaded by the plaintiff. Instruction 3 for plaintiff erroneously presents the question to the jury as to such custom. Bank v. Slater, 166 Mo. App. 637; Hogan v. Grillo, 42 Mo. App. 5.

*Dawson & Garvin* for respondent.

(1) The jury properly found that the appellant railroad company originally agreed to and assumed the common law obligation of the entire haul of these pipe then sound, and that while in transit under appellant's control, pipe was broken and plaintiff damaged, and the verdict should stand on this ground. Shewalter v. Railway, 84 Mo. App. 589; Hendrix v. Railroad, 107 Mo. App. 136; Cohen v. Railroad, 126 Mo. App. 244. (2) The record shows that in addition to its violation of its duty as insurer of safe carriage appellant, and its

agents at common law and under section 5222, Revised Statutes 1899, for whom it is responsible, were guilty of negligence which directly caused the damages awarded plaintiff by the jury and the trial court properly refused to instruct the jury peremptorily to find for this defendant. Bank v. Railroad, 119 Mo. App. 1; Beard v. Railroad (Iowa), 7 L. R. A. 283. (3) The question of negligence for which appellant is responsible to plaintiff was properly submitted to the jury and found against appellant also. Flynn v. Railway, 43 Mo. App. 442; Whitting v. Railroad, 101 Mo. 641; Bowring v. Railway, 90 Mo. App. 325; Ingwersen v. Railroad, 116 Mo. App. 139; Milling Co. v. Railroad, 127 Mo. App. 80.

STATEMENT.—Plaintiff is a corporation engaged in the manufacture and sale of sewer pipes and other clay products in the city of St. Louis and appellant, the Mobile & Ohio Railway Company, and its codefendants, the Missouri Pacific Railway, the Terminal Railroad Association and the Illinois Central Railway, are common carriers whose several lines so connect with each other as to form a continuous line of railroad from the city of St. Louis to New Orleans. This action was instituted against said railroad companies jointly, to recover for damage done to three carloads of sewer pipes shipped by plaintiff from St. Louis September 21, 1903, consigned to J. F. Shea in New Orleans. The petition alleges the pipes were in good condition when received by defendant for transportation and defendants, for certain through freight charges paid to them, agreed to carry the pipes from plaintiff's factory in St. Louis to New Orleans and there deliver them to said Shea in as good condition as when received from plaintiff; that in violation of their agreement and in total disregard of their duties as common carriers, the defendants so negligently and carelessly conducted themselves in the premises, the property was damaged by breakage in the sum of $199.35. We are not concerned with any of the

defendants except the Mobile & Ohio Railway Company, the appellant, because the verdict was in favor of the other railway companies and from said verdict no appeal was taken. Appellant denies the allegations of the petition, except the corporate character of the parties to the action, avers the three cars of pipes were delivered to the Missouri Pacific Railway Company at plaintiff's factory in St. Louis destined to New Orleans, and to be delivered to appellant for transportation to Jackson, Tennessee, there to be turned over to the Illinois Central Railway Company for hauling and delivery to the consignee in New Orleans. Appellant avers it has no line of railway in the State of Missouri, but its line begins at East St. Louis in the State of Illinois, where the pipes were received by it and thence carried to Jackson in the State of Tennessee, and there delivered to the Illinois Central Railway Company; that in consideration of a reduced charge for the carriage of the pipes, plaintiff agreed with appellant the pipes should be carried at the owner's risk, and the latter agreed to be bound by all stipulations, exceptions and conditions in the bills of lading issued by appellant to plaintiff, whether printed or written. The answer pleads in defense several stipulations of the bills of lading, to-wit: that each company engaged in the carriage of the pipes from St. Louis to New Orleans, should be liable for no damage done in transit, except damage occurring on the line of the particular company; and a further stipulation that neither of the carriers should be liable for loss or damage due to certain causes, among which was breakage. Besides those stipulations, another is pleaded, to-wit: claims for loss or damage must be made in writing to the agent at the point of delivery promptly after the arrival of the property and if delayed more than thirty days, no carrier will be liable in any event. After setting up those stipulations in the bills of lading, appellant avers the pipes were safely carried by it from East St. Louis, where it received them, to Jackson, Tennes-

see, without breakage; and if the pipes were broken as alleged in the petition, appellant was not liable therefor, as plaintiff had, in consideration of the reduced rate of freight, assumed the risk of breakage while in transit and relieved appellant, as well as the other carriers handling them, from liability for such a loss. It is also alleged plaintiff did not make claim in writing for damages, to the agent of the Illinois Central Railway Company, or to any other railway company, promptly after the arrival of the merchandise at New Orleans, or within thirty days after delivery, and because of failure to do this appellant was not liable for any loss sustained. Another defense set up in the answer is that whatever injury occurred to the piping was due to imperfect loading and packing in the cars by plaintiff.

More pipes were broken in the cars in question when they arrived at New Orleans than is usually incident to the transportation of sewer pipes over the route between St. Louis and New Orleans, and there was evidence conducing to prove the unusual breakage was due to the careless handling of the cars in transit or in the yards of the railway companies after arrival. But the evidence does not show where the careless handling occurred, or what carrier then had charge of the cars. The pipes were loaded into the cars at plaintiff's factory in St. Louis, and were taken charge of by the Missouri Pacific Railway Company to be hauled to Carondelet, a few miles south of St. Louis, and there delivered to the Terminal Railroad Company for carriage across the Mississippi river and delivery to appellant in East St. Louis. Both the Missouri Pacific Railway Company and the Terminal Railway Association allege, and the fact was proved, that under an arrangement with appellant, they took the cars for which it had issued bills of lading from St. Louis to appellant's terminal in East St. Louis, as it had no trackage in Missouri or across the river. The Missouri Pacific Railroad Company issued to plaintiff what are called dray-tickets of the following tenor:

"St. Louis, Mo., 9-21-03.

"Received from Blackmer & Post Pipe Co.

"Office: Equitable Building, 6th and Locust St.

"Factories: St. L. O. H. &. C. Railroad and Arsenal St.

"By Mo. Pac. Ry. Co.

"For: T. J. Shea, at New Orleans, La.

"Car: No. and Initial: 16072, T. P. & W.

"Articles: One car of sewer pipe.

O. R.

"Via: M. & O. care I. C. at Jackson, Tenn.

"Car loaded by shippers.

"The Missouri Pacific Railway Co. (Oak Hill Branch) getting no revenue except for switching, only handles it on condition that under no circumstances will it be held responsible for quantity, quality or condition of contents.

"Switching: $—————— per car of 30,000 pounds, excess at proportionate rate."

These tickets were surrendered to the Mobile & Ohio Railway Company at its St. Louis office and bills of lading issued by said railway company covering transportation from St. Louis to New Orleans. The bill of lading is as follows:

"MOBILE AND OHIO RAILROAD COMPANY.

"120 North Seventh Street.

"*Note.*—The rate named herein is a reduced rate, given in consideration of the shipper entering into the contract set out below.

"If the shipper elects not to accept the said reduced rate and conditions, he should notify the receiving agent in writing, at the time his property is offered for shipment, and if he does not give such notice, it will be understood that he desires the property carried subject to the bill of lading conditions, in order to secure the reduced rate authorized. Property not subject to the conditions of this bill of lading will be at carrier's lia-

bility, limited only as provided by common law and the Laws of the United States and of the several States in so far as they apply. Property thus carried will be charged twenty (20) per cent higher (subject to a minimum increase of one (1) cent per hundred pounds) than if shipped subject to the conditions of this bill of lading.

"St. Louis, 9-21-1903.

"Received by the Mobile & Ohio Railroad Company (hereinafter called the Company), from Blackmer & Post Pipe Co. (hereinafter called the shipper, and who makes this contract as owner or agent for the owner) the following described property (contents and value unknown) in apparent good order, except as noted, and consigned and marked as indicated, to be transported by the Mobile & Ohio Railroad Company to.............. and thence by railroad, steamboat or other forwarding lines with which it connects, to...................... upon the following conditions:

"The company agrees to carry said property to destination if on its road; if said destination is not on its road and the company guarantees a through rate to destination, then it agrees to deliver said property to such other carrier on the route to destination as the company may select, but it does not agree to carry to any point beyond its own line, or be responsible beyond its own line, in any manner under any circumstances.

"In consideration of all of which, and especially of said reduced rate, the shipper agrees that every service to be performed by the company hereunder shall be subject to all the conditions herein, all of which the shipper accepts and agrees are just and reasonable; and further agrees that unless the other carriers to which said property may be delivered in the course of transportation to destination make different contract or contracts, the transportation, over said connecting carrier's lines shall be upon the terms and conditions herein.

But neither said company nor any other carrier carrying hereunder, as hereby provided, shall be liable for any loss or damage not occurring on its own line, nor after said property is ready for delivery to consignee.

"No carrier or party in possession of all or any of the property herein described shall be liable for .............. breakage, etc.

"Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event.

"Consigned to T. J. Shea,
        "New Orleans, La.
        "Via. Ill. Cent. R. R., Jackson, Tenn.

...........................................

| List of Articles | : | Weight |
| | : | Subject to correction |
| 3 cars Sewer Pipe | : | |
| O. R. | : | |
| 11262 N. P. ........... : .......... .... 30,000 | | |
| 35022 C. M. & St. P... : .......... 31,000 | | |
| 1672 T. O. W. ....... : .......... 34,000 | | |

F. W. BIRCHETT.

"The fact that the property is marked to a point beyond the company's line shall not be construed as an agreement by the company to carry beyond its own line."

There was also, as said, a stipulation that no company should be liable for breakage. Evidence was given pro and con on whether the freight charge was the common or a reduced rate. Plaintiff's secretary who arranged for the shipment with the Mobile & Ohio Company testified:

"Never offer more than one form of bill of lading. The sewer pipe was delivered to the Missouri Pacific Railroad Company. Our works are located on their

tracks. They turn it over to the Terminal Association. The Mobile & Ohio took it from East St. Louis to Jackson, Tennessee, where it was given to the Illinois Central. The Mobile & Ohio has no rails into New Orleans. These cars were sent over the Illinois Central on account of the work of the consignee in New Orleans being nearer to the tracks of the Illinois Central, and they were routed over the Mobile & Ohio to Jackson, Tennessee, and from Jackson, Tenn., to New Orleans over the Illinois Central. I made this arrangement. We obtain a receipt or dray ticket, from the Missouri Pacific for the delivery of the cars to the Mobile & Ohio in East St. Louis, and upon this a bill of lading was issued by the Mobile & Ohio taking up the dray tickets.

"Q. What was the arrangement? A. The arrangement was the M. & O. was to take it to Jackson, Tenn., and the Ill. Central was to take it from Jackson, Tennessee, to New Orleans on the through rate of fourteen cents per hundred from our works. This rate was to cover or include all charges between our factory and New Orleans. At the time there were no two rates offered. The fourteen-cent rate is the only rate. There was nothing said as to our assuming the risk of breakage. . . .

"The routing of these three cars was unusual; that is, they were via. the M. & O. and Ill. Cent. jointly and we made an agreement with the M. & O. and Ill. Central jointly to take these cars to New Orleans.

"Q. Whom did you make that agreement with? A. With the M. & O. commercial office, and the Ill. Central commercial office.

"Q. How was that contract evidenced? A. It was oral.

"Q. That was simply as to the routing of the cars? A. Yes, sir."

Verbal notice of the breakage was given a clerk of the railway in New Orleans and there is evidence to prove a usage of business by which a detailed statement

of the damage might be made in writing after thirty days, and the companies would accept it and act on it. The court directed a verdict for the Missouri Pacific Company and the Terminal Association. A verdict was returned for plaintiff against the Mobile & Ohio Railroad Company and it appealed.

GOODE, J. (after stating the facts).—This case is similar in some aspects to Blackmer & Post Pipe Co. v. Mobile & Ohio Ry. Co., the New Orleans & Northeastern Ry. Co., the Missouri Pacific Ry. Co. and the Terminal Association, *infra*, p. 479, 119 S. W. 1. In the present case the Illinois Central Railway Company occupies the position of final carrier instead of the New Orleans & Northeastern Company; and hence is one of the defendants, while the company last named is a defendant in the other case. But the evidence and the theories on which the two causes were tried were not identical. The same confusion in stating divers grounds of recovery is found in the petition in both cases, though, in the main, the plaintiff insisted on a judgment against that carrier only whose negligence caused the damage, but was not quite consistent in pursuing this theory, as will be seen in the present case upon reading the given instruction P-4. Said instruction told the jury that if they found plaintiff paid the full freight rate for the shipment, and defendants made no deduction or special rate for him, he was not bound by the special contract in the bill of lading which was set up in the answer of the Mobile & Ohio Company and referred to in the answers of the other defendants, but the jury might disregard the same except the clause providing that no carrier should be liable for loss or damage not occurring on its portion of the route, which clause might be considered in determining whether the railroad companies acted independently or jointly and whether their liability to plaintiff was joint or several. Every other instruction asked by plaintiff proceeded on

the theory of negligence only, and that plaintiff's recovery must be confined to the company found to have been guilty of negligence. The receipts issued by the Mobile & Ohio Company are like those issued in the other case, except in designating as the final carrier the Illinois Central Railway Company. They are through contracts, as a round rate for the entire journey was charged and in the parts of the receipts which contracted to transport the property, there is no designation of the point to which the Mobile & Ohio Company agreed to carry; whereas at the foot of the receipts the destination was shown to be New Orleans. We refer to the opinion in the other case for the reasoning and authorities on which this ruling is based. Plaintiff's secretary testified the arrangement for shipping was unusual in the present instance, and was that the Mobile & Ohio Company should take the pipes to Jackson, Tennessee, and the Illinois Central Company from there to New Orleans, for a through rate; that the arrangement was with the Mobile & Ohio Company and the Illinois Central Company jointly, and was made with the freight offices of the two companies in St. Louis. It is insisted this testimony, taken in connection with the receipts, shows a contract with the Mobile & Ohio Company to carry only to the end of its line, and a separate agreement with the Illinois Central Company to carry from there to New Orleans. Anterior verbal agreements with the Mobile & Ohio Company were merged in the contractual terms of the bill of lading, which, as we have said, was a contract to carry through. [Kellerman v. Railroad, 136 Mo. 177; 1 Hutchinson, Carriers (M. & D. Ed.), sec. 167.] Moreover, the testimony of said witness had no tendency to show distinct contracts by the Mobile & Ohio and the Illinois Central Companies that each should carry only over its own line, but, instead a joint contract with both of them to carry from St. Louis to New Orleans. As said, this joint arrangement, if one was made, was mentioned in a vague way in one of the instructions

(P-4), but was hardly predicated as ground for a verdict. The contract being a through one, the Mobile & Ohio Company (appellant) would be liable for any breakage occurring anywhere on the route whether from negligence or not, unless there was a consideration for the restriction of its common law liability; that is to say, unless there was a reduced freight rate, said company was liable all the way as an insurer. And as the contract was a through one, it was liable for negligent breakage anywhere on the route whatever rate was charged. See opinion in Blackmer, etc., Co. v. Mobile & Ohio and New Orleans & Northeastern Cos. The instructions given at plaintiff's request proceeded on the theory of negligence, except P4. However, while plaintiff's given instructions asked a verdict for careless damage and against no carrier except the culpable one, they were not explicit enough considering the possible effect of instruction P-4, in declaring neither of the defendants was liable except for negligent injury occurring while the goods were in its custody. This is the law of the case, not because the Mobile & Ohio Company had the right to limit its liability, after contracting to carry through to losses due to negligence on its own line, but because plaintiff chose to join with it the other defendants, and as we held in the other case, thereby assumed the burden of proving which defendant caused the loss. Most of the instructions requested by defendant and refused by the court, omitted the question of whether a reduced rate was charged or not, and proceeded on the theory that no defendant, not even the Mobile & Ohio Company, could be liable in any contingency for the negligence of any other carrier. This would not be true as regards the Mobile & Ohio Company, unless a reduced freight rate was charged, for, otherwise, as stated supra, having issued a through bill of lading, it would be liable as an insurer for loss occurring anywhere on the route. The fourth refused instruction, while perhaps it declared the

137 App.—10

law as between the two railway companies mentioned in it, was erroneous in implying there was a presumption against plaintiff that if the Illinois Central Company received the cars from the Mobile & Ohio Company without objection, they were in good order at the time. The same may be said of the sixth refused instruction. The eighth was erroneous because it assumed the sewer pipes were shipped under a contract exempting the Mobile & Ohio Company from liability for breakage while in transit; whereas the stipulation against liability for breakage was good only if there was a consideration for it, which was a disputed issue. The ninth refused instruction was erroneous because the evidence tended to prove the Missouri Pacific and Terminal Association were agents of the Mobile & Ohio Company in handling the pipes, and said instruction exonerated the latter company if the pipes were damaged by the Terminal Association or the Missouri Pacific Company. The tenth was erroneous in ignoring the liability of the Mobile & Ohio Company as an insurer if the regular rate was charged, for breakage occurring from any cause on the entire journey, except from the act of God and the public enemy. The court gave three instructions for appellant. The first two (A and B) were erroneous and should not have been given for the reason they omitted to submit the issue of consideration for exemption from liability, and the third (C) was erroneous because it exempted all the defendants from liability even for breakage due to negligence.

The verdict cannot be upheld for the evidence does not show the injury to the property occurred while it was in the custody of either the Mobile & Ohio Company or its agents the Missouri Pacific Company and the Terminal Association. The judgment is, therefore, reversed and the cause remanded to be retried according to the views expressed in this opinion and the opinion in the other case. All concur.