W. R. SMITH and CORD C. SMITH, Co-partners as W. R. SMITH & SON, Respondents, v. GULF, COLORADO & SANTA FE RAILWAY COMPANY and THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, February 2, 1914.

1. **DAMAGES: Railroads: Shipment of Oysters.** The plaintiffs sued to recover damages to a shipment of oysters, which the defendants transported from Fort Worth, Texas, to Topeka, Kansas. The oysters were alleged to have spoiled, and to have been rendered totally unfit, and of no value, by coming in contact with the outer air while en route. *Held*, that plaintiff

cannot recover, when his evidence goes no further than to show that his injury was the result of one of two or more equally reasonable causes, for one or more of which· the defendant would not be liable.

2. ———: ———: ———: Negligence. If the cause of action stands on the negligence of the carrier, and not on the common law liability of the carrier as an insurer, the burden of proof is upon the plaintiff from the beginning to the end of the case.

3. ———: ———: ———: ———: In an action to recover from a common carrier damages to a shipment of oysters, the shipper must show, first, that the carrier knew, or should have known of the defect and failed to exercise proper care to discover it or to remedy it, and, second, that a negligent breach of such duty was the proximate cause of the loss.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone,* Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellants.

*Glen R. Donaldson* for respondents.

JOHNSON, J.—Plaintiffs, who are partners doing business in Topeka, Kansas, sued to recover damages they allege they sustained in consequence of negligence of defendants in the transportation of a carload of fresh oysters from Fort Worth, Texas, to Topeka.

Plaintiffs' vendor shipped the oysters from Fort Worth to Kansas City, December 11, 1910, under standard form bill of lading issued by defendant Gulf, Colorado & Santa Fe Railway Company. On arrival of the car at Kansas City the broker through whom plaintiff purchased the oysters received it and reconsigned it to plaintiffs at Topeka, under a standard form bill of lading issued by the defendant The Atchison, Topeka & Santa Fe Railway Company. There was no

delay in either transportation but on receiving the car at Topeka plaintiffs found the oysters were spoiled and worthless. This suit was filed against both carriers and the gist of the pleaded cause is that there was a through shipment of the merchandise from Fort Worth to Topeka and that the damages resulted from negligence in transporting such highly perishable freight in a defective car. The allegation of negligence is that "defendants knew that said shipment consisted of fresh oysters and knew or by the exercise of ordinary could have known that said oysters must be kept in a tightly closed car, free from contact with the outer air, and that contact with such outer air would spoil and depreciate said oysters but that the defendants wholly neglecting their duty to properly protect said oysters during shipment placed said oysters in a defective car whereby and by reason of which negligence the said 1220 gallons of oysters above mentioned were spoiled and rendered totally unfit and of no value."

In separate answers defendants pleaded special defenses based on allegations that the transportation from Fort Worth to Topeka was accomplished through the agency of successive but independent transactions between plaintiffs and defendants and that plaintiffs failed to comply with a provision in each bill of lading requiring notice of loss to be given in a specified time. The reply pleaded a waiver of such notice. A trial resulted in a verdict and judgment for plaintiffs against both defendants.

It appears from the evidence that the transportation of fresh oysters a long distance requires careful packing and handling to keep them from spoiling. There is no complaint of any dereliction of defendants in the performance of the duties imposed on them as carriers and by the terms of the shipping contract, except in one particular. The initial carrier furnished a refrigerator car, properly filled its bunkers with ice

and the shipper loaded the oysters (which were contained in vessels designed to be made air-tight after being filled) into the car and packed these vessels in ice. The shipper whose deposition was introduced by plaintiffs testified: "The oysters that we shipped W. R. Smith & Son of Topeka, in this car, were fresh and each package was iced heavily so that they would carry through to destination beyond a doubt, without spoilage, even if the bunkers of the refrigerator car that we placed them in were not iced, but we saw that these bunkers were iced before placing the packages into the car." The Topeka witnesses introduced by plaintiffs testified to conditions which tend to show that the car was properly iced and the containers were properly packed in ice but there is room in their testimony for a reasonable inference that the containers in some instances were not carefully sealed and, therefore, were not air-tight. They say that the ice bunkers still were sufficiently filled but the packing had melted away from the containers and, thereby, the temperature of their contents was raised to a point that set processes of decay to work.

The witnesses attribute this condition to a defect they discovered in the doors on one side of the car which prevented them from being tightly closed. As with a kitchen refrigerator it is necessary to exclude the outer air which if admitted would melt the ice too rapidly and the doors of refrigerator cars are made to fit so closely that when closed the car practically becomes air-tight.

The doors in question, so plaintiffs say, had warped or bulged in a way to prevent their proper union and to leave open cracks at their top and bottom through which the outer air gained access to the car and melted the ice packed around the containers. Employees of the Atchison road at Topeka who inspected the car deny the existence of such defect and

all the witnesses at Fort Worth say that the car was in perfect order when it started on its journey. The shipper testified:

"The car was in first-class condition as far as I could see. I saw the doors closed on it and it was sealed in my presence. Q. Was there any complaint made to you about the carload of oysters shipped from Fort Worth to W. R. Smith & Son about December 11, 1910, other than that they were short, which claim you say you would not allow? A. No. There was no complaint made to us of any character whatever, except the claim that the packages were short measure, which claim we would not allow and did not allow. Q. Was there any complaint made to you, or to the Texas Fish & Oyster Distributing Company, of which you were the General Manager, about the quality or condition of the oysters. A. No. No complaint whatever. Q. In the suit filed by W. R. Smith & Son against the defendant Railway Companies, they set up the claim that the oysters arrived in bad condition. Do you know anything about that? Was there any report ever made to you by W. R. Smith & Son? A. The oysters could not have arrived in bad condition, for I had him to return one of the packages, when he claimed short measure, and this package I reshipped to a point in Texas, and they arrived at their destination in good condition, and we received our pay for same."

The employee of plaintiffs who unloaded the car testified: "Q. How much ice was there around these containers? A. Do you mean the packages they was shipped in? Q. Yes, sir, boxes and barrels. A. They was anywhere from nothing to half full. Q. I will ask you whether or not that would have anything to do with the oysters remaining in good condition during shipment. A. Yes, sir. Q. What? A. They won't keep without ice."

As to the condition the containers were in one of plaintiffs testified: "Q. I wish you would explain to the jury a little more fully how these oysters that came in this shipment in the boxes were packed. Were they first put in tins? A . Yes, sir. Q. And those tins have a small opening at the top, the side of the top, and the oysters are poured in there? A. Yes, sir. Q. Of what size are those tins, or what size were they in this particular shipment. A. They run from ones to fives. Q. You mean from one gallon to five gallon tins? A. Yes, sir. Q. After the oysters are poured in the opening,. it has to be soldered up? A. Yes, sir. Q. And that was true of the oysters in this shipment? A. Yes, sir. Q. So that these tins would be air-tight and water-tight? A. They are supposed to be. Q. They were soldered up? They didn't have any opening in them? A. Sometimes they did an awful poor job of soldering. Q. I am asking about this particular shipment. So far as you recollect they were all soldered up, weren't they? A. No, sir, they were not all soldered up. They had solder on them. Q. That is up to the man that packs the shipment? A. Yes, sir."

The brief and argument of counsel for defendants is addressed entirely to the point that the court erred in overruling the separate demurrers to the evidence filed by the defendants. Counsel for plaintiffs have not favored us with either brief or argument. We do not know whether to attribute this omission to over-confidence or despair, but in either case it would be without justification. It is not fair to the court and certainly is deficient in prudence for the successful party in the trial court to offer no opposition in the appellate court to the attacks of his adversary on the fruits of his victory and to attempt to force the court to take up the gage of battle for him. A party so inconsiderate and so negligent in the care of his own in-

terests should not complain if he falls a victim to the inherent weakness of mere passive resistance.

At the beginning of our investigation of the questions argued by defendants in support of the demurrers to the evidence we find a pleaded cause founded not on the common law liability of a carrier as an insurer but on a specified act of negligence. In such case the plaintiff takes the burden and must carry it to the end of proving that his damages resulted from the alleged cause and from no other.

"The party who founds his cause of action upon negligence must be prepared to establish the assertion by proof. If the cause of action stands on negligence of the carrier and not on the common law liability of the carrier as an insurer, the burden of proof is upon the plaintiff from the beginning to the end of the case." (Witting v. Railway Co., 101 Mo. l. c. 640; Bockserman v. Railway, 169 Mo. App. 168; Haase & Sons Co. v. Dispatch Co., 143 Mo. App. 42; Hamilton v. Railroad, 114 Mo. App. 504.) Under this rule the burden is on plaintiffs to show that their damages were caused by negligence of defendants in furnishing a defective car.

There is no proof direct or circumstantial that the initial carrier, The Gulf, Colorado & Santa Fe Railway Co., furnished a defective car at Fort Worth but to the contrary all the evidence, including that offered by plaintiffs, is to the effect that the car had been thoroughly inspected and was in perfect condition when it left Fort Worth. There is not the slightest evidence of any change in this condition during the transportation to Kansas City and as we view the evidence, and the law applicable to it, there is an entire failure of proof as against the first carrier whose responsibility ended with the delivery of the car to plaintiffs' broker at Kansas City. This was not a through shipment to Topeka but the transportation was divided

into two separate, distinct and independent stages. Had the first bill of lading called for the delivery of the car at Topeka, the theory of a through shipment and of the creation between the carriers of a partnership or agency relation would be well grounded, but since the initial bill of lading imposed no duty on the Gulf Company to deliver the car to the Atchison Company at Kansas City for further transportation, we cannot perceive any reason from which the existence of any relations, contractual or otherwise, between those two carriers may be inferred. Clearly it could not be inferred after the car had arrived at Kansas City from the mere fact that the Atchison Company was selected by the consignee as the carrier to whom it should be delivered for further transporation. The demurrer of the Gulf Company should have been sustained.

The evidence is uncontradicted that on receiving the car at Kansas City the Atchison Company inspected it and found it in good order and, as stated, there is no evidence that the alleged defect appeared before the beginning of the transportation from Kansas City to Topeka. In the absence of such proof plaintiffs have failed to sustain the charge of negligence against that company. Negligence is a breach of duty and on the hypothesis that the car left Kansas City in good order and became defective on the short journey to Topeka—a distance of not over seventy miles—it devolved on plaintiffs to show, first, that the carrier knew, or should have known, of the defect and failed to exercise proper care to discover it or to remedy it and, second, that a negligent breach of such duty was the proximate cause of the loss. (Goodrich v. Railway, 152 Mo. 222; Glasscock v. Dry Goods Co., 105 Mo. App. 657; Hester v. Packing Co., 84 Mo. App. 451; Kelley v. Railway, 105 Mo. App. 365.) The evidence of plaintiffs utterly fails in both of these particulars.

The defect was of such nature that it could have arisen at any time in the course of the transportation and, therefore, at a time when it could not possibly have had a deleterious effect on the merchandise. Indeed it is impossible to conceive of any causal relation between the defect and the injury under the hypothesis we have shown is conclusively established, i. e., that the car was in good order on its arrival at Kansas City.

On the other hand the condition of the car at Topeka, as shown by uncontradicted evidence, strongly indicates that the injury to the oysters was due to negligent packing. There was no unusual diminution of the ice in the bunkers put in by the first carrier but there was much less packing around the containers than there should have been. Despite the assertion of the shipper that he properly packed the containers, the evidence of plaintiffs, especially in view of their assertions that the containers were not properly sealed, tends just as strongly to support the inference that negligence of the shipper in packing was the proximate cause of the injury as it does to sustain the charge of negligence in the petition. The rule is well settled in negligence law that a plaintiff cannot recover when his evidence goes no further than to show that his injury was the result of one of two or more equally reasonable causes for one or more of which the defendant would not be liable. (Haake v. Davis, 166 Mo. App. l. c. 253, and cases there cited.)

It follows that since there is a vital failure of proof as to either defendant the judgment must be reversed. It is so ordered. All concur.