BLACKMER & POST PIPE COMPANY, Respondent, v. MOBILE & OHIO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 30, 1916.

1. **COMMON CARRIERS: Interstate Commerce: Limitation of Liability as Insurer: Shipper's Knowledge.** Where the duly published tariffs of a carrier sets out two different rates for transporting an interstate shipment between two points, under the lower of which the carrier is not liable for breakage, a shipper who ships under the lower rate is conclusively presumed to know about the rates and the nonliability provision, and is precluded by such provision from recovering for breakage, in an action prosecuted on the theory that the carrier is liable as an insurer.

2. ——: ——: **Damage to Shipment: Negligence: Sufficiency of Evidence.** In an action against a carrier for damage to an interstate shipment of sewer pipes, alleged to have been caused by the carrier's negligence, evidence that the pipes were heavy and hard to break, that, when properly packed in cars, they will stand considerable rough handling and will not break while being carried over even greater distance than the pipes in question were carried, that, when the pipes in question were placed in the cars, they were carefully examined and found to be in good condition, that they were properly loaded in the cars, and that, when they arrived at the destination, approximately one-third of them were broken, *held* to warrant a finding that the pipes were damaged while in transit, as a result of the negligence of defendant or its connecting carriers.

3. ——: ——: ——: ——: **Evidence: Relevancy: Harmless Error.** In an action against a carrier for damage to an interstate shipment of sewer pipes, alleged to have been caused by the carrier's negligence, the consignee's foreman testified that he had looked after the unloading of all cars of pipe shipped by plaintiff to such consignee during the year of the shipment in question, and

that, at various times, he had seen the carrier allow cars loaded with tile to bump into other cars and that it had permitted cars to bump into cars he was unloading. On cross-examination, he testified that he did not know whether any of the cars involved in this case were thus handled. *Held*, that, while the testimony of this witness was not distinctly confined to the cars involved in this case, nevertheless it was for the jury to give it such weight as it deserved, and, even if it were incompetent, under the circumstances of the case, its admission would not be reversible error.

4. **APPELLATE PRACTICE: Verdicts: Recovery Upon Wrong Counts: Harmless Error.** The petition, in an action against a carrier for damage to an interstate shipment, was in four counts; the first and third counting on the theory that defendant was liable as an insurer, and the second and fourth proceeding on the theory that defendant's negligence caused the damage. Plaintiff was not entitled to recover upon the insurance counts, but the trial court nevertheless submitted those counts to the jury, charging them that if they found for plaintiff upon those counts, they should return a verdict for defendant upon the negligence counts, or, if they should find for plaintiff upon the negligence counts also, their verdict thereon should be for nominal damages only. The verdict was for substantial damages upon the insurance counts and for nominal damages upon the negligence counts. *Held*, that, notwithstanding plaintiff was not entitled to recover upon the insurance counts, the judgment should not, in view of Secs. 1850 and 2082, forbidding reversals for errors not material, be reversed, since the jury found that defendant was negligent, and the method of computing damages being the same under either theory, the award upon the insurance counts would have been the amount awarded upon the negligence counts, had the jury not been limited to an award of nominal damages thereon, and the verdict was, therefore, in effect, a finding that plaintiff was entitled to recover upon the negligence counts the amount awarded upon the insurance counts.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant.

(1) Filing of the rates with the Interstate Commerce Commission and furnishing copies thereof to the freight office is incontrovertible evidence of the existence of such rates, and the shipper is charged with notice thereof. Railroad v. Cisco Oil Mills, 204

U. S. 449-451 (51 L. E. 562-563); Kellerman v. Railroad, 136 Mo. 188; Donovan v. Wells, Fargo & Co., 265 Mo. 313; Southern Railroad v. Carl, 227 U. S. 653; Railroad v. Hooker, 233 U. S. 97; Poor Grain Co. v. Railroad, 12 I. C. C. 470; Railway Co. v. Stone, 169 Mo. App. 122; Sutton v. Railroad, 159 Mo. App. 685; Great Northern Railroad v. O'Connor, 232 U. S. 508. From these authorities it follows that the court erred: (a) In admitting evidence that the plaintiff did not know of any other rate than the fourteen cent rate; (b) That no other than the fourteen cent rate was offered at the time of the shipment; (c) That witness did not know of the class rate of twenty-five cents per hundred pounds. (2) If there are two rates, substantially different, one at carrier's risk, the other at shipper's risk, this will uphold the contract for release; although the higher rate, as a matter of fact, is never used. Daveneck v. Railroad, 57 Mo. App. 555; McFadden v. Railroad, 92 Mo. 343. (3) When a bill of lading is issued by a railroad and delivered to the shipper, he is conclusively presumed to assent, in the absence of fraud, to the terms of the instrument. Kellerman v. Railroad, 136 Mo. 189; O'Bryan v. Kinney, 74 Mo. 125; Patterson v. Railroad, 56 Mo. App. 657; Railroad v. Cleary, 77 Mo. 634; Schneider v. Express Co., 63 Mo. 376; Donovan v. Express Co., 265 Mo. 291. (4) When the bill of lading recites that the rate charged is a reduced rate, the burden is on the shipper to show that the rate charged is not a reduced rate. Freeman v. Railroad, 138 Mo. App. 322. (5) The testimony of the manner of handling cars by the connecting carrier, other than cars in question, was irrelevant and immaterial. Jones on Evidence, sec. 140; Coal v. Railroad, 60 Mo. 229; Hepsley v. Railroad, 88 Mo. 354. (6) There was no evidence of negligence in handling the pipe by the railroad, and the court should have given instruction "D." (7) Where negligence is the ground of plaintiff's complaint, burden is on plaintiff to show negligence, and this burden at no stage of the proceeding shifts to defendant. Ecton v. Railroad, 125 Mo.

App. 223; Haase v. Fish Co., 143 Mo. App. 42; Clark v. Railroad, 138 Mo. App. 424; Smith v. Railroad, 177 Mo. App. 275; Bockersman v. Railroad, 169 Mo. App. 172.

*Dawson & Garvin* for respondent.

Evidence as to the character and condition of the goods and the manner in which they are packed when delivered for shipment, and of the fact of their being badly broken when delivered by him at the end of the transit, and of the character and extent of the breakage may be such as to afford inferential evidence of negligence by the carrier, sufficient to take the case to the jury. Flynn v. Railroad, 43 Mo. App. 441; Witting v. Railroad, 101 Mo. 641; Bowring v. Railroad, 90 Mo. App. 325.

THOMPSON, J.—This is a suit for damages to sewer pipe shipped by the plaintiff over defendant's railroad. It was composed of a shipment of five cars, four cars being included in one bill of lading, shipped September 19, 1903, and one car in another bill of lading, shipped October 15, 1903, both shipments being from St.Louis, Missouri, to New Orleans, Louisiana. This is the third appeal in this case. The first appeal was by defendant. The case was reversed and remanded, the opinion being reported under the title of Blackmer & Post Pipe Company v. Mobile & Ohio Railroad Company, 137 Mo. App. 133, 119 S. W. 13. The second appeal was by the plaintiff and is reported under the title of Blackmer & Post Pipe Company v. Mobile & Ohio Railroad Company, 168 Mo. App. 22, 151 S. W. 164.

The petition is drawn in four counts, two counts upon the damage done to the cars included in each bill of lading. The first count is for damage to four cars of pipe, and is drawn upon the theory that the defendant failed to transport safely the pipe, as was its duty. In other words, drawn upon the common-law liability of a carrier as an insurer. The second count is for damages to the same four cars, and is drawn

upon the theory that the defendant was negligent in the transportation of the pipe. The third count is in like terms of the first, upon the second bill of lading, for damages to one car of sewer pipe, based upon the theory that it was not safely transported, as was the duty of the defendant, arising from the common-law insurance liability. The fourth count is for the damage to one car of sewer pipe upon the second bill of lading, alleging that defendant negligently and carelessly handled the same in transit. There was a verdict for plaintiff on the first count for $385.59 and on the third count for $78.77, and for plaintiff on the second and fourth counts for one cent each.

The answer is a general denial and sets up the affirmative defense that the bills of lading under which the pipe was shipped recited that the rate charged for transportation to New Orleans was a reduced rate, and that the defendant would not be liable for breakage of the pipe, and that the plaintiff in consideration of the reduced rate on said cars of pipe did assume all risks for breakage of said pipe in transit, and so relieved this defendant, as well as all other carriers over whose lines said cars of pipe were carried, from liability for breakage, and that liability for damage to said pipe is especially excepted in said bills of lading.

The proof showed that the pipe was delivered at St. Louis, Missouri, to the Missouri Pacific Railroad Company, and it delivered its dray ticket or receipt for the pipe. This dray ticket was made out by the plaintiff and states on its face that the pipe was shipped at the risk of the plaintiff, and that it was to be delivered to the Mobile & Ohio Railroad Company. This dray ticket was delivered to the defendant company at its office in St. Louis and a bill of lading issued in lieu thereof. The bill of lading was prepared in the office of the plaintiff company on forms furnished by the defendant company, and it was written in the bill of lading by the plaintiff that the pipe should be carried at the risk of the plaintiff. The bills of lading, in the printed part, contained the following provision:

"The rate named herein is a reduced rate given in consideration of the shipper entering into the contract set out below. If the shipper elects not to accept the said reduced rate and conditions, he should notify the receiving agent in writing at the time his property is offered for shipment, and if he does not give such notice, it will be understood that he desires the property carried subject to the bill of lading conditions in order to secure the reduced rate authorized. The property not subject to these conditions of this bill of lading will be at carrier's liability, limited only as provided by common law, and the laws of the United States and of the several States in so far as they apply. The property thus carried will be charged twenty per cent higher, subject to minimum increase of one cent per hundred pounds than if shipped subject to the conditions of this bill of lading."

And said bill of lading further provides:

"In consideration of all of which and especially of said reduced rate, the shipper agrees that every service to be performed by the company hereunder shall be subject to all the conditions herein, all of which the shipper accepts and agrees are just and reasonable."

And it further provides:

"No carrier or parties in possession of all or any of the property herein described shall be liable for any loss thereof or damages thereto by causes beyond its control, . . . or by leakage, breakage, chafing."

And the bill of lading concludes, paragraph 14, as follows:

"In accepting this bill of lading the shipper, owner and consignee of the goods, the holder of the bill of lading, agrees to be bound by all of its stipulations, exceptions and conditions, whether printed or written."

The plaintiff offered evidence tending to show that the sewer pipe involved in both shipments was in good sound condition at the time it was loaded into the cars and was billed, marked and consigned for shipment to Louisiana, and that the pipe was properly loaded into the cars, and that when these cars were delivered at New Orleans, Louisiana, they were in damaged condition

—that is to say, the pipe therein was broken and damaged. The freight bill was paid in New Orleans and the cars unloaded there, the rate on the bills being fourteen cents. The defendant introduced, without objection from the plaintiff, a certificate from the Secretary of the Interstate Commerce Commission. This certificate set out the rules of classification adopted by the railroad and tariffs on file with the Interstate Commerce Commission. These tariffs show that: "Pipe, viz: Earthen and concrete (pipe or tile) same C. L." was put in class A. This certificate further shows that the joint freight tariff, I. C. C. No. 2810, filed February 26, 1903, and in force at the time of these shipments provided for a rate from St. Louis, Missouri to New Orleans, Louisiana, in connection with the New Orleans & Northeastern Railroad on class A merchandise of twenty-five cents per hundred pounds. The same tariff on file with the Interstate Commerce Commission provided for a "commodity" rate of fourteen cents per hundred pounds, with the following stipulation known as Rule 5:

"Whenever commodity rates are shown they are intended to apply on shipments made at owner's risk and released. The rates on the same commodities if shipped at carrier's risk, will be regular rates as per classification."

These classifications and rates were shown by the introduction in the evidence by the defendant, without any objection on the part of the plaintiff, of certain extracts from tariffs filed with the Interstate Commerce Commission prior to the dates of the shipments involved in this case, and which were in force and effect at that time, and spoken of in the evidence as Classification No. 140, I. C. C. 2523, filed October 27, 1902, and extracts from Mobile & Ohio Railroad joint freight tariff I. C. C. No. 2810, filed February 26, 1903. The evidence was all one way that these tariffs were filed and posted according to law.

At the close of the evidence the defendant offered instructions in effect advising the jury that the plain-

tiff was charged with notice of the contents of the tar-
iffs on file with the Interstate Commerce Commission,
and also advising the jury that, at the time the care were
shipped there were two rates on sewer pipe from St.
Louis, Missouri to New Orleans, Louisiana, one a twenty-
five cent rate and the other a fourteen cent rate.
These instructions the court refused to give, and on
its own motion gave the following instruction:

## No. 10.

"The court instructs the jury that if they believe
from the evidence that defendant, at the time of the
shipment in question, had two rates on sewer pipe from
St. Louis to New Orleans, under one of which rates
the pipe was to be carried by the defendant at the
risk of the shipper, being a lower rate, and under
the other rate the pipe was to be carried at the risk
of the defendant, then said provision in the contract
of shipment (the bill of lading) that the defendant
should not be liable for breakage is valid and binding,
and if the jury so find the facts to be and further find and
believe from the evidence that the plaintiff knew that
there were such two rates and accepted said lower
rate, then said defendant would not be liable for the
breakage of said pipe while being transported from
St. Louis to New Orleans, unless the jury should fur-
ther find from the evidence that such breakage was
caused by the negligence and carelessness of defendant
in handling said shipments."

It was conceded in the lower court and also in
this court by both sides that if the defendant had in
force a twenty-five cent and a fourteen cent rate on
sewer pipe from St. Louis, Missouri to New Orleans,
Louisana, at the time of these shipments, the defendant,
under the bills of lading and under the tariff rules in-
troduced in evidence, would not be liable as an in-
surer—that is, would not be liable on counts one
and three of plaintiff's petition—but that if defendant
or its connecting carriers were guilty of negligence in
the transportation of the sewer pipe, it would still be li-

able for negligence on counts two and four. In other words it is conceded that the defendant could by means of a special contract based upon a reduced rate exempt itself from liability as an insurer, but could not so exempt itself from negligence.

The appellant contends that the above instruction number 10, was erroneous in that it allowed the jury to pass upon the question as to whether, if there were two rates, the plaintiff knew of them. In this contention we believe that the appellant is correct. Under the tariffs mentioned above, which were introduced without objections and without dispute as the tariffs under which these shipments moved, there were two rates upon sewer pipe, one a classification rate of twenty-five cents and the other a commodity rate of fourteen cents. The plaintiff was bound to know of these rates, and should not have been able to say that there were not two rates, or that it did not know of the two rates.

In the case of Kansas City Southern R. R. v. Carl, 227 U. S. 1. c. 653, the court says:

"The shippers knowledge of the lawful rate is conclusively presumed."

In the case of Poor Grain Company v. Railroad, 12 I. C. C., 1. c. 470, Commissioner HARLAN, delivering the opinion, says:

"The carrier is required by the law to publish the rate and also to clearly indicate the route over which the published rate is applicable. When so published the rate named and the route designated stands as the law, binding as well on the shipper as upon the carrier. The schedule of rates published in the manner provided by law speaks with equal authority to the shipper and the carrier, and both are equally chargeable with notice of the rate and of the route over which the rate is made applicable."

In the case of Texas & Pacific R. R. Co. v. Cisco Oil Mill, 204 U. S. 1. c. 451, the court says:

"The filing of the schedule with the commission and and the furnishing by the railroad company of copies

to its freight offices incontrovertibly evidences that the tariff on rates contained in the schedules had been established and put in force as mentioned in the first sentence of the section, and the railroad company could not have been heard to assert to the contrary."

In the case of Boston & Maine R. R. v. Hooker, 233 U. S. 1. c. 113, the court says:

"The precise position of the defendant is that as the limitation of liability for baggage was filed and posted as a part of its schedules for passenger tariff, the limitation thereby became and was an essential part of its rate, from which under the interstate commerce law it could not deviate, and by which the plaintiff was bound, regardless of her knowledge of or assent to it. If the premise is sound, then the conclusion follows, for the public are held inexorably to the rate published, regardless of knowledge, assent or even misrepresentation. . . .

"It follows therefore, from the previous decisions in this court, that if it be found that the limitation of liability for baggage is required to be filed in the carrier's tariffs, the plaintiff was bound by such limitation. Having the notice which follows from the filed and published regulations, as required by the statute and the order of the Interstate Commerce Commission, she might have declared the value of her luggage, paid the excess tariff rate and thus secured the liability of the carrier to the full amount of the value of her baggage."

The Boston & Maine case was followed in the case of Donovan v. Wells, Fargo & Company, 265 Mo. 291. In this latter case, at page 316 the court says:

"So we think it fairly follows that where in an interstate shipment an oral contract is made, the terms of which are forbidden by law, which the shipper and the carrier must both notice, and where a published interstate rate is filed, containing regulations prescribing conditions precedent to the acceptance of goods for carriage, he who delivers such goods at the owner's request for shipment must be held to be au-

thorized by the owner to comply with the law, and with all reasonable published regulations as to the terms and conditions of shipment, and that the shipper will not be heard to assert to the contrary.''

To the same effect, see the recent case of Stubblefield v. St. Louis & San Francisco Railroad Company, 184 S. W. 149.

It follows from what has been said above that the court should not have allowed the jury to pass upon whether or not the plaintiff knew of the existence of the two rates, because as a matter of law, plaintiff was bound to know of the existence of the rates provided for in the tariffs. Indeed, under the law and undisputed evidence in this case, the jury ought to have been told that the plaintiff was not entitled to recover on counts one and three.

The appellant contends that the plaintiff was not entitled to recover on counts two and four, for the reason that there was no evidence of negligence on the part of the defendant. We cannot agree with appellant in this contention. At the trial the plaintiff offered evidence tending to show that all of the tile placed in the car at St. Louis was carefully examined and found to be in good sound condition, that it was properly loaded into the cars for shipment from St. Louis, Missouri to New Orleans, Louisiana. It appears that this sewer pipe is heavy and hard to break, and that when it is properly packed in cars it will carry over a distance such as the one involved in this case. The evidence further shows that, while in the cars so packed, it will stand considerable rough handling and not break. It further appears from the evidence that plaintiff had shipped great numbers of cars containing the same kind of tile as was contained in these cars, over similar distances and even greater distances, and at destination the tile or sewer pipe was found to be in like good order and condition as when shipped. It appears in this case that upon the delivery of these cars at New Orleans, Louisiana, approximately one third of the sewer pipe was broken. We believe that from this evidence

the jury was warranted in drawing the conclusion that the sewer pipe was damaged by the negligence and carelessness of the defendant or its connecting common carriers while in transit.

In Heck v. Mo. Pac. Ry. Co., 51 Mo. App. 533, 534, plaintiff sued defendant for breaking and damaging a certain leather-splitting machine. Judgment was given for plaintiff, on a trial without a jury, and defendant appealed. The court said:

"It appeared from the testimony, or, to be more accurate, there was testimony going to show that the machine was deliverd to defendant for shipment in sound condition and well and securely packed, and that it arrived at its destination with the legs broken. There was a special contract exempting defendant from liability in certain instances named, and we will assume that such exemption included machinery such as this was. We will also assume as true a matter about which there was contention between the parties, that the letters indorsed on the freight contract were 'O. R,' and were known to plaintiff. Defendant offered evidence going to show that the car in which the machine was placed was properly and carefully handled, that it received no rough handling and that no accident happened to it. The case is then left to stand with the onus on plaintiff throughout and with the testimony above stated; and the only question is, does it make such a case as should be submitted to the triers of the facts? We answer this in the affirmative. When the plaintiff delivered the machine to defendant in good condition, well and securely packed, and it was delivered by defendant at St. Louis with broken legs, it was circumstantial evidence from which a reasonable inference of negligence on defendant's part while the machine was in its charge as a carrier could be drawn. It was evidence for the court (trying the case as a jury) to consider in connection with defendants testimony, as to the care taken, etc. That consideration has resulted in plaintiff's favor, and we do not feel authorized to disturb it. This case is similar (though stronger for this plaintiff) to the

case of Witting v. Railroad, 101 Mo. 631. As stated in that case, the onus, in cases of this sort, is on the plaintiff throughout the trial to prove negligence of defendant; and, though such negligence will not be presumed, it may be inferred from circumstances legitimately appearing in the case. The judgment is with the concurrence of all affirmed.''

In the case of Witting v. St. Louis & San Francisco Railroad Company, 101 Mo. 631, 14 S. W. 743, it is said:

''There is evidence tending to show that the fountain was properly packed, and was delivered to the defendant in good order. It was badly broken when placed in the defendant's warehouse at St. Louis. The evidence of plaintiff and his brother is, that the crate was then broken on one side, and that one of the inside stays was broken and the others out of place. All this tends to show want of care on the part of defendant. Had the plaintiff brought this suit in the circuit court by declaring on the contract, setting out its provisions, and founding his case of negligence only, we think the evidence would have entitled him to go to the jury. It will not do to say the evidence shows no more than the simple fact that the apparatus was broken. The very circumstances which disclose this fact tend to show very great negligence on the part of the defendant. It is enough for the plaintiff to disclose circumstances sufficient to raise a fair inference of negligence. We can say with safety that such a breakage does not ordinarily occur where the property is transported with due care. There is an abundance of evidence to entitle the plaintiff to go to the jury on the issue of negligence, and especially is this so, since the means of showing how the accident occurred is with the defendant and not the plaintiff.''

Complaint is here made that the court allowed in evidence certain testimony of a foreman in the employ of the consignee at New Orleans, Louisiana, who testified that he unloaded all or looked after the unloading of all cars of pipe shipped in 1903 from plaintiff to the

consignee, being four or five hundred all together, and that at various times he would see the railroad switch cars loaded with tile around the yard and allow them to bump into other cars, and that the railroad would bump into cars that he was unloading. Upon cross-examination he testified that he did not know whether the cars thus handled were any of the five cars involved in this case. The testimony of this witness with reference to these cars is not distinctly confined to the cars involved in this case, but the witness was thoroughly cross-examined with reference to it, and we believe that it was for the jury to give such weight to it as it deserved, and even if the evidence was incompetent, under the circumstances of this case, we do not believe that its admission was reversible error.

On the measure of damages, the court instructed the jury to the effect that if they found in favor of the plaintiff on the first and third counts, they should assess plaintiff's damages based upon the difference, if any, in the market value of the sewer pipe at St. Louis in the condition it was shipped and its condition in which it was delivered at New Orleans, and the jury were further instructed that, in that event, they would find for the defendant on the second and fourth counts of the petition, or if they did find for plaintiff on those counts also, then their verdict would be for nominal damages only on those counts. As indicated above the jury found in favor of the plaintiff in the first count for $385.59 and on the third count for $78.77, and they further found the issues in favor of the plaintiff on the second and fourth counts and assessed its damages at one cent on each of these counts.

We have heretofore reached the conclusion that under the evidence in this case, the plaintiff ought not to have been allowed to recover on the first and third counts, that is, under the insurance liability of the defendant as a common carrier. It is evident, however, from this verdict that the jury reached the conclusion that the plaintiff was entitled to recover on the second and fourth counts, that is was entitled to

recover upon the liability of the common carrier for negligence, because the instruction on the measure of damages told the jury that if they found in favor of the plaintiff on the second and fourth counts, their verdict should be only for nominal damages in the event they found substantial damages on the first and third counts.

It will be remembered that under the pleadings in this case and the theory of both sides, the measure of damages in the event plaintiff was to recover was, by the terms of the bill of lading, to be computed on the difference in value of the good and broken pipe at the time and place of shipment, and the measure of plaintiff's recovery on any of the four counts was exactly the same, as was set forth in the instruction on the measure of damages. In other words the measure for a recovery for substantial damages was the same for count one as for count two, and the same for count three as for count four.

Under this instruction the jury found for the plaintiff on the first and third counts and assessed the actual damages on those counts. They also, at the same time, found for the plaintiff on the second and fourth counts for nominal damages. By this verdict on the second and fourth counts, the jury in reality found that the defendant was negligent in the transportation of the sewer pipe. But the jury could not assess the actual damages also under those counts because they had already assessed it under the first and third counts. They had computed this actual damage for the first and third counts, using a correct method for this case. This method for computing the actual damages, set forth in the instructions, was also the proper method for computing the actual damages in this case if the jury were to return a verdict for actual damages on the second and fourth counts for negligence of the defendant. So we have here a finding by the jury that plaintiff is entitled to recover on the second and fourth counts, because defendant was guilty of negligence. We have the amount of the actual damages suffered and

sustained by reason. of this negligence, because the amount of the actual damages had to be the same under the instruction for the first and second counts, and also the same for the third and fourth counts, and, therefore, when we have the damages for the first count assessed by the jury, we necessarily have the damages sustained under the second count, and when we have the damages for the third count, assessed by the jury, we necessarily have the damages sustained under the fourth count. The finding of the jury was in effect, therefore, that the plaintiff was entitled to recover for the negligence of defendant on the second count the amount found and assessed by it on the first count, and on the fourth count for the amount found and assessed by it on the third count. Holding this view of the case it is our duty to allow the judgment to stand. [Hamilton-Brown Shoe Company v. Wolff, 240 U. S. 251. Sections 2082 and 1850, R. S. Mo. 1909.]

The judgment is affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.