C. H. ROBINSON, Respondent, v. B. F. BUSH,
Receiver of the ST. LOUIS, IRON MOUNTAIN
AND SOUTHERN RAILWAY CO., a Corporation,
Appellant.

Springfield Court of Appeals, February 6, 1918.

1. **EVIDENCE: Admissions by Agent.** In an action against a rail-
road company for injuries to a shipment of live stock, testimony
as to admissions made by a brakeman of the defendant company,
but who was not running on the train carrying the shipment, is
inadmissible; for the admissions of an agent can only be received

against his principal when they are made as a part of the work or business he is doing or transacting.

2. **APPEAL AND ERROR: Review: Harmless Error.** In an action against a railroad company for injuries to a shipment of live stock. The erroneous reception of evidence of admissions of the railroad company's agent not made in the course of his employment cannot be treated as harmless because cumulative or other evidence of the company's negligence.

3. **CARRIERS: Carriage of Live Stock: Action: Negligence: Averment.** In an action for damages to an interstate shipment of live stock in which the carrier's liability was governed by the Carmack Amendment (Act June 29, 1906, ch. 3591, section 7, pars. 11, 12, 34 Stat. 595) as altered by the Cummins Amendment of 1916 (Act Aug. 9, 1916, ch. 301, 39 Stat. 441 (U. S. Comp. St. 1916, sec. 8604a), where plaintiff alleged the negligence of the railroad company instead of relying on its common-law liability as an insurer, he must, having averred the negligence, prove it as alleged, or there can be no recovery.

4. ———: **Liability: Liability as Insurer.** A common carrier is liable for all loss or injury not due to the act of God or the public enemy, the inherent nature or qualities of the goods, or the act or fault of the owner or shipper, although as to those excepted cases the carrier may be liable by reason of negligence.

5. ———: **Carriage of Live Stock: Actions: Evidence.** Where a shipper of live stock alleged that the railroad company was guilty of negligent delay in transportation, the shipper, while having the burden of proving such negligent delay, need not establish it by direct evidence.

6. ———: ———: ———: ———. Under Acts 1913, p. 177, amending Revised Statutes 1909, sec. 3121, declaring that in any action against a railroad corporation for damages on account of its failure to transport live stock within a reasonable time, proof of the failure to transport such live stock within a reasonable time shall constitute prima-facie proof of negligent delay casting on the corporation the burden of showing that the failure was not due to its negligence, held that the question whether a railroad company was guilty of negligent delay in the transportation of a shipment of live stock was for the jury.

7. ———: ———: **Negligence: Proof.** Mere proof of injury to a shipment of live stock while in transit will not make a prima-facie showing of negligent operation so as to cast the burden of disproving negligence on the carrier.

8. ———: ———: **Actions: Evidence: Jury Question.** In an action against a railroad company for injuries to a shipment of live

stock, the question whether the company was guilty of negligent operation of the train transporting the stock held for the jury.

9. ———: ———: ———: Liability. A carrier is not liable for injuries to animals being transported where such injuries result from the propensities of the animals themselves, or from attacks of the other animals.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard*, Judge.

REVERSED AND REMANDED.

*James F. Green* and *J. C. Sheppard* for appellant.

*A. T. Brewster* and *W. A. Welker* for respondent.

BRADLEY, J.—Plaintiff brought suit against defendant for damages to an interstate shipment of horses and mares, shipped from East St. Louis, Illinois, to Paragould, Arkansas. Upon trial before the court and a jury, plaintiff recovered judgment for $340, and defendant appealed.

The horses were delivered to defendant in East St. Louis about 3.30 p. m., September 21, 1916, and arrived at Paragould, Arkansas, at 12:50 a. m., September 23rd, and were unloaded by defendant's agent at 2 a. m. same morning. They were perhaps not loaded on car in East St. Louis until about 5 p. m., and there is no evidence showing just what time they were shipped out of East St. Louis. The distance from East St. Louis, Illinois, to Paragould, Arkansas, is about 254 miles; about thirty-three hours elapsed from the time this shipment was delivered to defendant before it arrived at Paragould. At Illmo, Missouri, about one-hundred and forty-two miles south of East St. Louis, one mare was down and defendant put the other twenty-nine head in a separate car, and made the run from Illmo to Paragould a distance of about one-hundred and twelve miles in eight hours and forty-five minutes. There is no evidence giving the exact time the train pulling these horses arrived at Illmo. The

conductor who had charge of the train from Illmo to Paragould said his train was due to leave Illmo at 2:30 p. m., and that he left at 4:50. Twenty minutes of this time was lost in the Illmo yards after this conductor had charge of the train, and the balance of the time from 2:30 to 4:50 he said was probably due to the lateness of the train from East St. Louis. Anyway the horses were in the car between twenty-three and twenty-five hours, between East St. Louis and Illmo, or fully ten hours longer than is usual in making the run from East St. Louis to Illmo. When plaintiff delivered the horses to defendant they were in good condition except one mare which plaintiff describes thus: "She had a little skinned place on her ankle, either her right hind ankle or left hind ankle, and she was bruised on her leg just a very slight bit. It wasn't a serious injury. None of the horses were injured. I went into the pens where the horses were, and examined them carefully before I bought them and after I bought them." When delivered at Paragould these injuries were noted by defendant's agent: "One bay mare, eyes swollen; small skinned place on forehead; left knee swollen. One bay mare, skinned place on forehead; right hind leg swollen; eyes swollen; lost colt; one bay mare, skinned place on forehead; eyes swollen; one brown mare, eye punctured and eye out; one small bay mare, lost colt; skinned place on hip and tail; one iron gray, cut under ankle, right hind foot; one black mare, skinned all over; eyes and head swollen; hole in hip; swollen all over; lost colt." Plaintiff testified to many other injuries than these noted; stating that every horse and mare in the shipment were "just bunged up in different ways."

Defendant makes four separate assignments of error, but the view we take it will not be necessary to consider but two: (1) Alleged error based upon admission in evidence of alleged incompetent evidence; (2) the failure of the court to give a peremptory instruction for defendant; this assignment is based upon the proposition that plaintiff bottomed his cause of

action on negligence and not upon the carrier's common-law liability as an insurer; and defendant contends that plaintiff failed to make proof of sufficient negligence to justify the submission of the case to the jury.

*On the admission of evidence*: W. E. Beacham, a witness for plaintiff over defendant's objection and exception was permitted to testify about what one Jake Harris told him concerning the supposed cause of injury to these horses. Harris was a brakeman and his run was between Illmo and Paragould; and Beacham says that Harris told him at Piggott, a station between Illmo and Paragould, that this car of horses was "wrecked." Beacham on being recalled testified over the objection and exception of the defendant: "A. Yes, sir; he told me they had started with the car. Q. What car. A. Why, the car of horses, car of horses shipped to Robinson. Q. What did he tell you about that car? A. They had brought the car back and set it out at Illmo yards. Q. What was the occasion of the conversation? A. I asked him if he had a car of horses billed for Robinson at Paragould, and he said he thought there was a car for him—this was at Piggott, and I had called up the yard office and they said there was no car for us; Mr. Harris said they had started out with this car for Paragould, but had pulled out a drawbar, or something like that, and he thought some of the stock was injured, that one of them was killed; and they had set it out at the Illmo yards. Q. What effect did he say the pulling of the drawbar had upon the stock? A. He said it had injured some of the stock and he thought one of them was killed" On cross-examination: "Q. Did you say Mr. Harris told you he was brakeman on this particular train that had this carload, that took it to Paragould? A. He said they started out of the yards with it. Q. I say did he tell you he was braking on that train? A. He said they started with it, the train he was working on. Q. Where? A. Out of the Illmo yards. Q. They first started out with it from the Illmo yards? A. Yes, sir. Q. Where was it then that the drawhead

was pulled? A. He said about the Illmo yards. Q. He didn't say they took it out of there? A. No, sir. Q. He didn't say he was working on that train at the time the drawhead was pulled? A. He said his train had a load. Q. He had one? A. Yes, sir; he had one load going south. Q. Down the Cotton Belt? A. Yes, sir. Q. Cotton Belt run into Paragould? A. Yes, sir. Q. Which road does he work for? A. Iron Mountain, I suppose. Q. Do you know? A. I don't know for sure. Q. You don't know? A. No, sir. Q. Was he working for the Iron Mountain or for the Cotton Belt? A. My understanding was—Q. From what he said? A.—that he was in the employ of the St. Louis, Iron Mountain and Southern Railway Company. Q. Did he tell you that? A. I don't think right at that time he did—he has told me—but I don't think he told me that day. Q. Did Jake Harris say he was there? A. No; I don't know that he said he was right there. Q. *Somebody else told him about it?* A. *He didn't say, he just told me about it when I asked about the car.* Q. *Didn't say whether he had just heard it or whether he had seen it?* A. *He didn't say.* Q. You don't know whether it was this load or not? A. Yes, sir; it was this load. Q. Did he say it was this load that went to Paragould for Robinson? A. Yes, sir. That was on Friday, on the 22nd, I reckon. The horses were not at Paragould then. Harris said they were at the Illmo yards when he left.'' It is apparent that Harris may have been telling what someone else told him. It was shown by the conductor of the train which pulled this car from Illmo to Paragould that Harris was not connected with the train in any manner, but was brakeman on a different train; and that nothing happened to the train that transported these horses from Illmo to Paragould; and this conductor says: ''I took this carload of freight consigned to Robinson from Illmo to Paragould. There were no drawbars pulled out in any of the cars of my train, or any other train carrying this stock out of Illmo. None of these cars was broken or injured, or had anything the

matter with them at all.'' Plaintiff undertakes to justify the admission of this evidence on the ground that Harris was the agent of defendant, and the admission of the agent in the circumstances would be competent against his principal. But this is upon the theory that such admission was made concerning a fact which the agent observed at the time of the happening thereof, and while engaged in the performance of his duty in connection therewith. The principle is well illustrated in Parr v. Ins. Co., 178 Mo. App. l. c. 160, 165 S. W. 1152, where it is said: ''The rule against admitting the statements or declarations of an agent, unless made in doing an act within the scope of his authority, is well known. The difficulty is in making an application of the rule. The declarations of an agent, relied upon to bind the principal, rest upon a different footing from admissions offered to bind the person making the admission. Every one has the legal right to make an admission against himself whether true or not, and he has no right to complain of the use of such admission as binding upon him. But he ought not to be held responsible, on this principle, for admissions made against him by an agent, unless those admissions or declarations are made as a part of the work or business he is doing or transacting under authority of his principal. In such case they are not admissible upon the theory that they are admissions made by the principal through his agent, but on the theory that they are a part of the act done by the agent in behalf of his principal and explain or determine the quality of that act and are therefore as binding on the principal as the act itself. In other words, they are admissible because they are a part of what the courts (for want of a better term), call the *res gestae*, i. e., the thing done or the transaction carried out, and to which the admissions relate.'' This principle is again clearly set forth in Atkinson v. School of Osteopathy, 240 Mo. l. c. 338, 144 S. W. 816; and in Bevis v. B. & O. Ry. Company, 26 Mo. App. 19, McDermott v. The Hannibal & St. Joseph Railroad Co.,

73 Mo. 516. Respondent further seeks to justify the admission of the evidence on the theory that it was merely cumulative, and only tended to prove negligence which was already established, but as we view the record this evidence cannot be passed over on this ground. This purported to be a positive admission by the defendant that the car was wrecked, and no doubt impressed the jury equally as much and perhaps more than any other evidence offered tending to show negligence.

*On the request for a peremptory instruction*: The grounds upon which plaintiff seeks recovery as shown by his petition are: "Plaintiff further states that said mares and horses should have been delivered to plaintiff at Paragould, Arkansas, within twenty-eight hours from the time said mares and horses were delivered to and accepted by said defendant at National Stock Yards, Illinois, if shipped, carried and transported by said defendant with due care and reasonable dispatch; that defendant wholly disregarding its duties as such carrier, negligently and carelessly furnished and provided a car at National Stock Yards, Illinois, in which to load said mares and horses, which was broken and out of repair, that it was wholly unfit and inadequate to contain said horses and mares; that said horses and mares were loaded into said car by defendant's agents, servants and employees, or caused to be loaded in said cars by said defendant's agent, servants and employees, and that said car was so negligently and carelessly handled by defendant, his agents, servants and employees, that said car became so completely and totally wrecked between National Stock Yards, Illinois, and Paragould, Arkansas, that said horses and mares were, by the defendant unloaded from said car and re-loaded into two other cars in which said cars they were delivered to plaintiff at the station of Paragould, Arkansas; that defendant by its agents, servants and employees, negligently and carelessly failed to ship, carry and transport said mares and horses to said station of Paragould, Arkansas, without delay and in

good condition, but on the contrary, by its agents, servants and employees, negligently and carelessly so operated their railroad, trains and locomotives over, in and by which said horses and mares were carried, shipped and transported as to prevent their delivery to this plaintiff at said station of Paragould, Arkansas, until more than forty-eight hours after said mares and horses were delivered to and accepted by defendant at National Stock Yards, Illinois, as aforesaid. Plaintiff further states that defendant otherwise, and as aforesaid so roughly, negligently and carelessly handled, shipped, carried and transported said mares and horses together with the unreasonable delay aforesaid, that thereby and as a result thereof,'' certain injuries resulted. While plaintiff stated in his petition that the usual time for livestock shipment between East St. Louis and Paragould, Arkansas, is twenty-eight hours, the evidence shows it to be from eighteen to twenty hours. It appears from the evidence that at Illmo twenty-nine head of these horses were transferred to a different car, because one was discovered to be down. This one down was left in the original car and it alone was shipped in the original car from Illmo to Paragould. Inspection of both cars at Paragould disclosed no defects. In Bockserman v. Railroad, 169 Mo. App. l. c. 172, 152 S. W. 389, a case where recovery was sought upon the grounds of negligence of the carrier, the court said: ''With the case in this aspect, it devolves upon the plaintiff to show negligence, for he grounds his cause of action on that score alone in the petition. Under the more recent decisions of our Supreme Court it is said that it must be taken as the established law of this State, that, when the cause of action against the carrier stands on the ground of negligence on the part of the carrier; the burden of proof is upon the plaintiff to make good the charge laid. In other words, that the party who founds his cause of action on the negligence of the carrier with respect to the transportation of freight must be prepared to establish the assertion by proof, and the burden of proof is on him from the

beginning to the end of the case." Further on in this same case, l. c. 174, it is said: "On the other hand, the common-law obligation of the initial carrier under a contract of through shipment is not declared upon in the petition, for it avers a loss through defendant's negligence and carelessness." Nor does the fact that in the case at bar the shipment was an interstate shipment change this rule. The identical question was presented in Smith & Son v. Railroad, 177 Mo. App. 269, 164 S. W. 132, an interstate shipment and there the court said, l. c. 275: "At the beginning of our investigation of the questions argued by defendants in support of the demurrers to the evidence we find a pleaded cause founded not on the common-law liability of a carrier as an insurer, but on a specified act of negligence. In such case the plaintiff takes the burden and must carry it to the end of proving that his damages resulted from the alleged cause and from no other. The party who founds his cause of action upon negligence must be prepared to establish the assertion by proof. If the cause of action stands on negligence of the carrier and not on the common-law liability of the carrier as an insurer, the burden of proof is upon the plaintiff from the beginning to the end of the case. [Citing cases.] Under this rule the burden is on plaintiffs to show that their damages were caused by negligence of defendants in furnishing a defective car." To the same effect is Keithley and Quinn v. Lusk et al., 190 Mo. App. 458, 177 S. W. 756. At l. c. 463, of this case it is said: "As plaintiffs sue for specific negligence in not keeping open the ventilators of the car, they must recover on such specific negligence." [Citing Smith & Son v. Railroad, supra, and other cases.] This shipment is governed by what is generally known as the Carmack Amendment to the Interstate Commerce Act as amended by the Cummins Amendment in 1916 (8 U. S. Comp. Stat., sec. 8604a). We do not mean to infer that plaintiff is limited by the Federal Act, supra, to a suit based solely on negligence; but that where he bottoms his cause of action on negligence and

not on the common liability as an insurer he is bound by the route he chooses. He will not be permitted under the decisions, supra, to select one route and reach his goal by another which he did not plead nor rely upon in the trial court. This for the reason that the defendant is brought into court on a specific cause of action, and is not required to defend against any other cause of action which plaintiff may have, but has not pleaded. The common-law liability of the carrier is stated in 10 C. J. 110 thus: "The rule might now be more fully stated as being that the common carrier is liable for: all loss or injury not due to the act of God or the public enemy, the inherent nature, or qualities of the goods, or the act or fault of the owner or shipper, it being understood that as to all of these excepted cases the carrier may be liable by reason of his own negligence or that of his agents, servants or employees." For Missouri cases in point on the inherent nature or quality see Vail v. Pacific R. Company, 63 Mo. 230; McFall v. Wabash R. Company, 117 Mo. App. 477, 94 S. W. 570; Cash v. Wabash R. Co., 81 Mo. 109; Hance v. Pacific Express Co., 48 Mo. App. 179. In Botts v. Railroad, 191 Mo. App. l. c. 682, it is held that the fault of the shipper would relieve the carrier of liability.

But conceding that when the shipper has grounded his cause on negligence that the burden is on him from the beginning to the end, it does not follow that the shipper must prove by direct evidence the negligence upon which he relies. However in the case at bar plaintiff made positive proof of delay, and whether this was unreasonable delay is a proper question for the jury. What might be unreasonable under one state of facts might not be so considered under another. But, because no doubt that the causes usually giving rise to delay are peculiarly within the knowledge of the carrier, the Legislature (Acts 1913, p. 177), amended section 3121, Revised Statutes 1909, by adding this proviso: "Provided, that in any action brought by a shipper against any railroad corporation for damages

on account of the failure of such railroad company to transport live stock within a reasonable time, proof of the failure of such railroad corporation individually, or in connection with a connecting carrier, to transport such live stock within a reasonable time shall constitute prima-facie proof of negligent delay in the transportation of such live stock, on the part of the railroad corporation or corporations transporting such live stock, and the burden of proof shall then be upon such railroad corporation to show that the failure to transport such live stock within a reasonable time was not due to its negligence." Dawson Bros. v. C. B. & Q. Railroad Company, 194 S. W. (Mo. App.) 743, was an interstate shipment but it is illustrative of the charge of unreasonable delay under the statute, supra. That suit was for damages for extra shrinkage and decline of market on a carload of hogs on account of negligent delay in transporting them. In this case l. c. 744, the court says: "The act of March 20, 1913 (Laws of 1913, p. 177), amending section 3121, Revised Statutes 1909, provides that proof of failure to transport within a reasonable time shall constitute prima-facie proof of negligent delay, and the burden of proof is then on the railroad to show that the failure to transport within a reasonable time was not due to its negligence. Of course, plaintiff must first offer evidence tending to show that the delay was unreasonable. But we think this was done." Plaintiff in that case made proof similar to the evidence in the instant case on the charge of negligent delay by showing the usual time in shipments of the character there in question between the points of receipt and destination. In Baker v. Bush, 194 S. W. (Mo. App.) l. c. 1061 this court in considering an alleged unreasonable delay said: "It is true that it has been held that where a shipper of live stock brings an action against a carrier on the ground of negligence he cannot recover on mere proof of delay without evidence of negligence (McDowell v. Railway Co., 167 Mo. App. 576, 152 S. W. 435), but the General Assembly of 1913 passed an act (Laws 1913, p. 177)

wherein it is provided that proof of the failure to transport live stock within a reasonable time shall constitute proof of negligent delay in transportation, and that the burden of proof shall then be upon the carrier to show that its failure was not due to its negligence; this upon the common sense theory of placing the burden of explanation upon those who are in possession of every detail of the trip. [Sikes v. Railroad, 190 Mo. App. l. c. 189, 190, 176 S. W. 255.]'' In Riddler v. Railroad, 184 Mo. App. l. c. 713, where a question of unreasonable delay was involved respecting an interstate shipment, the court said: ''The plaintiff's evidence showed that there was a delay of nearly double the usual time required for such a shipment. This was proof of a failure to transport within a reasonable time, and, under section 3121, Revised Statutes 1909, as amended by the Act of March 20, 1913, Laws of Mo., 1913, p. 177, made out a prima-facie case of negligent delay.'' There can hardly be room for controversy on the plaintiff's right to go to the jury on the charge of unreasonable delay.

Did plaintiff make sufficient proof in support of his charge of negligent operation to entitle him to go to the jury on that question? This is not always any easy matter to determine as is often the case; plaintiff is unable to show more than the fact that he delivered his stock in good condition and that they were delivered at destination in bad condition. Just when the character and extent of the injuries will amount to substantial evidence of negligent operation so as to take that charge to the jury must, because of the very nature of the question, depend upon the circumstances of each particular case. It appears to be well settled however in this State that mere proof of injury while in transit where the petition is grounded on negligence will not make a prima-facie showing of negligent operation so as to cast the burden of disproving negligence upon the carrier. [Witting v. Railroad, 101 Mo. 631, 14 S. W. 743; Bockserman v. Railroad, 169 Mo. App. l. c. 172, 152 S. W. 389;

Smith & Son v. Railroad, 177 Mo. App. 269, 164 S. W. 132; Keithley & Quinn v. Lusk et al., 190 Mo. App. 458, 177 S. W. 756, and other authorities cited, supra.] In the case at bar there was no direct evidence of plaintiff's general charge of negligent operation of the train, but this may be inferred from all the facts and circumstances in evidence, the principal of which circumstances are the character and extent of the injuries to plaintiff's horses. In Botts v. Railroad, 191 Mo. App. 1. c. 680, 177 S. W. 746, the court said: "In the case of inanimate freight, the common carrier is an insurer and the duty devolves upon him to deliver the goods intact at the point of destination; but there is an exception to this rule with respect to the shipment of live stock, which arises because of the inherent vice or propensities of the animals. Because of this exception, it is essential to show a state of facts or circumstances from which negligent conduct may be inferred on the part of the carrier, in order to affix liability against it. But, as before said, it is not essential to show positive acts of negligence and the circumstances attending the shipment may be such as to afford a fair inference of dereliction of duty on the carrier's part. In this view, it has heretofore been said by this court, in the case of a shipment of poultry, that, where it appeared the poultry was delivered to the carrier in good condition and after a comparatively short run delivered to the consignee with a large percentage of the poultry dead and that such death rate in shipments of like character was so extraordinary that its parallel could not be shown, the shipper made out a prima-facie case of negligent conduct on the part of the carrier so as to cast the burden of proof upon it. [See Hance v. Pacific Express Co., 48 Mo. App. 179.]" In Cash v. Railroad, 81 Mo. App. 1. c. 115, the Kansas City Court of Appeals, per GILL, J., states the matter thus: "And now as in the Hance case, so in this, the physical injuries inflicted and shown on the animals when they arrived at St. Louis were of such a character as to justify the inference that the stock was maimed,

bruised and crippled, not by action of their own vitality or vicious propensities, but were damaged by the careless or unskillful management of the car or train. The jury had the right to consider the management of the car or train. The jury had the right to consider the circumstances and draw therefrom any reasonable inference consistent therewith. And in the light of these patent facts the jury found that the horses were injured by the negligent operation of the train." .To the same effect is Libby v. Railroad, 137 Mo. App. 1. c. 282, where it is said: "There is no direct testimony whatever as to how the crippled steer was injured. It appears to have been in good condition when delivered to the defendant and severely bruised, skinned, and otherwise crippled when arriving at the point of destination. When these facts are considered together with the fact that thirty-one hours were consumed in transit for a shipment which should have been made in eight or ten hours and that such injuries were unusual, or at least not usually incident to a shipment with due care, we believe the question of how the steer was injured, should be referred to the jury." [Citing Hance v. Express Co., and Cash v. Railroad, supra. See, also, Cunningham v. Railroad, 167 Mo. App. 273, 149 S. W. 1151; Cudahy Packing Co. v. Railroad, 196 Mo. App. 528, 187 S. W. 149; Blackmer, etc., Co. v. Railroad, 196 Mo. App. 139, 190 S. W. 1032.] When the character and extent of the injuries to these horses are considered, we think that there was no error in submitting to the jury the question of plaintiff's charge of negligent operation of the train. In a great number of the cases similar to the one at bar the shipper has shown by experienced stockmen that the injuries complained of are not such as usually happen in shipments of the character in question, which evidence tends to establish the usual allegation of negligent handling of train. Where fairminded men whose experience in handling and . shipping animals of the character under consideration in any given case has been such as to qualify them to speak in the nature of

an expert, they are much better prepared to say that certain injuries occurring in transit to animals are unusual and out of the ordinary, or otherwise than are men who are not thus experienced; and such evidence ought to be offered. A question of fact naturally arises in the instant case based upon the nature of the injuries to the horses. If such injuries might in the ordinary course of transportation result from the inherent nature of the horses themselves, then that becomes a question of fact to be determined like any other fact. As pointed out, supra, damages resulting from the inherent character of the thing shipped is one of the exceptions to the common-law liability of the carrier as an insurer. The exception is stated in 10 C. J. 123, thus: "The rule established from motives of policy, which charges the carrier in almost all cases is not unreasonable in its application to inanimate chattels. But the carrier of animals by a mode of conveyance opposed to their habits and instincts, has no such means of securing absolute safety. They may die of fright, or by refusing to eat, or they may, notwithstanding every precaution, destroy themselves in attempting to break away from the fastenings by which they are secured in the vehicle used to transport them, or they may kill each other. In such cases supposing all proper care and foresight to have been exercised by the carrier it would be unreasonable in a high degree to charge him with the loss." We think however that the injuries to the horses and mares in the case at bar were of such character and extent as to justify the submission of the cause to the jury upon the charge of negligent operation of the train. Defendant's request for a peremptory instruction was properly refused.

For the error noted above in admitting the evidence of the witness Beacham, this cause is reversed and remanded. *Sturgis, P. J.,* and *Farrington, J.,* concur.