This is a case in which two appeals evolve, designated on the docket by their respective numbers. The appeals are presented together and will be disposed of in one opinion. The action is to recover for alleged damages to a carload of apples carried by defendant and its connecting carrier from Kansas City, Missouri *Page 1215 
to New York City. Both carriers were joined as defendants. Subsequently the case was dismissed as to the last carrier.
The petition seeks to recover upon the ground of specific negligence and alleges that about June 5, 1922, plaintiff delivered to defendant 742 boxes of apples consigned to a dealer in New York City; that the shipment was accepted and sent over defendant's lines to Chicago and thence over the lines of the Erie Railroad Company to destination and delivered in accordance with shipping instructions; that the apples were in good sound condition at the time they were received by the company and that upon delivery of the shipment they were "in a mashed, bruised, prematurely ripe, and some of the boxes were broken and the contents gone." That the shipper elected to send the shipment under refrigeration and paid an additional amount for that service. The alleged negligence causing damage is stated this way:
"That the cause of the condition of the apples as aforesaid at the time of delivery at destination was due to negligence and carelessness on the part of the defendants in that it was their duty to properly refrigerate the shipment while in transit and defendants carelessly and negligently either jointly or severally, failed to properly refrigerate the shipment in transit and failed to keep this shipment at a temperature while in transit that would preserve the shipment and keep it in good condition upon the arrival at destination. The shipment when received by defendant, Chicago, Burlington Quincy Railroad Company, would preserve and keep until it reached destination in good condition had it received ordinary care at the hands of these defendants.
"Plaintiffs further say that shipment was transferred from the original car into another car by defendants or their agents or servants, either jointly or severally and in reloading the said shipment the defendants, their agents or servants, jointly or severally, negligently and carelessly so conducted themselves that the packages were not placed in the car so they would face each other and the upper rows were not placed squarely over the package below and no strips were placed between the packages and the packages were not loaded solidly in the car thus permitting the packages to shift and they did shift in the car. It was the duty of these defendants in reloading the shipment to pack the shipment with ordinary care so it would carry to destination safely. This shipment was not transported from origin to destination within the usual and ordinary time shipments so moving, but on the contrary was negligently and carelessly unreasonably delayed in transit. That it was the duty of defendant to carry this shipment within a reasonable time."
It is further alleged that due to the delay the market depreciated and plaintiffs were compelled to accept less for the shipment than *Page 1216 
they otherwise would have received. The total amount of damage is stated to be $888.25.
The answer was a general denial, and upon the issues thus joined plaintiffs introduced their evidence. Defendant offered no evidence, but presented its demurrer to plaintiffs' evidence, and the action of the court thereon and subsequent proceedings are evidenced by the record recital as follows:
"At the conclusion of plaintiffs' evidence, the court marked "Given" an instruction instructing the jury that under the pleadings and the evidence their verdict should be for the defendant. Thereupon, the plaintiffs took an involuntary non-suit with leave to move to set the same aside.
"Plaintiff asks leave of court to file an amended petition setting up general negligence on the part of the defendant, to which the defendant objected on the ground that the same would be setting up a new cause of action requiring a different character of proof. Objection sustained by the court."
There is no exception shown to the action of the court upon the request to file an amended petition. In due time plaintiffs filed their motion to set aside the non-suit and for a new trial. This motion is framed in twelve numerical paragraphs. 1, 2, 3, 4, 7, 8, 10, 11, and 12, challenge with variation the action of the court in sustaining the demurrer to the evidence; 6 and 7 allege error in the admission and exclusion of testimony; and 9 states the court erred in refusing to allow plaintiffs to amend their petition. All of the foregoing occurred at and during the January term, 1929. At the following March term of court, plaintiffs' motion was heard, considered, and sustained. Apparently the court sustained the motion without stating the ground upon which its action was based and both parties so treat the case. Defendant excepted to the action of the court in granting a new trial and duly appealed.
Defendant presented its bill of exceptions which was signed by the trial judge and by him ordered to be filed and made a part of the record in the case on October 18, 1929. Thereafter on October 23, 1929, plaintiffs filed a motion to set aside the bill of exceptions and the filing thereof, whereby they sought to have certain amendments to the bill of exceptions to show objections and exceptions in their behalf which were not shown in the bill. The court heard plaintiffs' evidence upon this motion and overruled it. Thereupon plaintiffs took an appeal from the order overruling their motion to set aside the filing of the bill of exceptions.
The case was first presented to this court by brief and argument December 9, 1929, at which time both parties treated the case as though there was no evidence to support any specific allegation of negligence contained in the petition. The case was presented upon *Page 1217 
other points of alleged error, plaintiffs conceding that the proof failed to show specific negligence. Upon conclusions reached by this court a rehearing was granted and the case is now presented in a somewhat different manner. The plaintiffs contend that they made a case for the jury under their specific allegations and insist upon the point. The evidence will be reviewed and the decisive questions raised at this hearing will be determined.
The evidence shows that plaintiffs were engaged in the commission business in Kansas City; that the apples in question were of the variety known as "winesaps;" that they were purchased by plaintiffs in the State of Washington, from whence they were shipped to Kansas City, November 23, 1921, and upon arrival were placed in cold storage where they were held until June 5, 1922, and were then placed in a car of defendant, which at the time was put under refrigeration and its bunkers filled with ice, and received by defendant for transportation and delivery to a specified consignee in New York City. The apples were packed in "regular square apple boxes;" they were described as "extra fancy;" each apple was wrapped in paper; the apples remained in the same boxes until shipped to New York. The shipment was known as "shipper's load and count." The apples were in sound condition when delivered to the carrier; when they arrived at their destination a part of the boxes were broken and the apples were repacked; after the recoopering five boxes were empty; about 25% of the apples were damaged by bruises, scald, and decay, and the apples were overripe. They were transferred from one car to another in transit. There is some testimony that some damage would result to apples if they were transferred from one car to another in the month of June, depending upon the length of time taken to make the transfer, and that the shipment could be transferred without any bad effect if not roughly handled and if properly reloaded; and that the bruises on the apples could not be the result of their age, and that rough handling would cause bruises, and a change in temperature would produce scalds. There was also evidence that the regular season for shipping winesap apples to New York was from December to March, and that when such apples were shipped as late as June, after being kept in storage "they will show to be in a ripe condition — fair quality;" and also "they will show bruises, some scald, decay, and overripeness." There was also evidence of delay in transit and that if the shipment had gone forward in the usual time it would have arrived in New York four days earlier than it did arrive. There is no evidence of a change in market value during the days that the shipment was over-due. There was evidence that apples of the quality of the ones shipped when in good condition were of the value of $4 per box in New York, and that the reasonable value of the apples in *Page 1218 
the condition in which they were received was an average price of $2.80 per box, and that they were sold at prices ranging from $2.50 to $3.25 per box.
There was evidence of one witness that a change of temperature will produce scald, and that the speed with which apples will scald depends upon whether or not they are oil rubbed. There is no evidence that scald is caused only by changes in temperature or that these apples had been oil rubbed, but there is evidence that by keeping apples beyond the period of the regular shipping season and as late as June, that the natural result is that they start to show scald and decay, bruises and overripeness. The evidence shows that plaintiffs' claim for damage was presented to and declined by both carriers; that efforts had been made between the parties to adjust the claim; that on July 16, 1924, the resident freight claim adjuster for the Burlington at Kansas City, wrote a letter to the representatives of the plaintiffs in which reference is made to the prior treaties between the parties looking to a settlement and in which it is stated: "We do not feel that sufficient evidence has been submitted to show that carriers are responsible for damages to the extent claimed." Reference is also made to the fact that the consignee claimed that a joint inspection had been made at which time 25% of fruit was found to be decayed, although the consignee's agent acknowledged in writing that the apples were "O.K." The letter also states "that the shipment had to be transferred in transit and it may be that some slight damage resulted therefrom." Reference is also made to an offer of settlement rejected by claimants, and the claim papers were returned with the letter which confirmed disallowance as required under bill of lading. It was also indicated that the offer of settlement was still in effect. There is nothing in the letter which in any way amounts to an admission of negligence on the part of defendant which did cause damage.
Upon defendant's appeal we have two questions to answer. First, was there any error assigned in the motion to set aside the non-suit and for a new trial upon which the granting of a new trial would be justified? And second, was there any power, discretionary or otherwise, in the trial court, after the judgment term expired, to set aside the non-suit and grant a new trial, independent of the grounds alleged in the motion? Upon the appeal of the plaintiffs we have the single question as to whether the court erred in overruling plaintiffs' motion to set aside the bill of exceptions and amend same. We will deal with them in the order stated.
 OPINION.
The contents of the motion to set aside the nonsuit and grant a new trial have been set out. All of the grounds alleged therein are *Page 1219 
referable to three points, viz.: (1) That the court erred in sustaining defendant's demurrer to the evidence; (2) that the court erred in admitting and excluding testimony; and (3) that the court erred in refusing the request of plaintiffs to amend their petition and withdraw specific allegations and substitute general allegations of negligence.
We have reached the conclusion that there is no ground assigned in the motion which would afford a reason for granting a new trial. The evidence does not tend to establish any of the specific charges of negligence. Sufficient of the petition has been set out to show these special assignments of negligence, and they may be epitomized as follows: (a) That defendant negligently failed to properly refrigerate the shipment in transit; (b) that defendant was guilty of negligence in the manner in which the shipment was reloaded or repacked in a car to which it was transferred; and (c) that defendant negligently delayed the shipment during which time the market price declined.
The substance of all the evidence pertaining to any one of these charges of negligence has been set forth. On the point of refrigeration the evidence shows that the bunkers of the car were packed with ice at the time the shipment was loaded, and there is no showing whatever of any failure or neglect on the part of defendant to repack the bunkers with ice and properly refrigerate the car; and likewise no showing of defendant's default to maintain a proper temperature in the car containing the shipment. While there is evidence that changes in temperature might produce scalds, depending upon the duration of the change, still there is no showing of any change of temperature in the car such as to cause damage. The same observation may be made upon the charge of negligence in reference to the manner in which the shipment was replaced or repacked in another car. The charge is plain and specific that the boxes were improperly placed and that this caused damage. There is not a particle of evidence as to the manner in which the boxes were placed at the time of the transfer or that damage resulted on account of an improper method of reloading. While there is slight evidence tending to show that some damage might result in a transfer of such shipment from one car to another if the time of transfer was prolonged, and if the shipment was roughly handled, there is no evidence as to the length of time required in making the transfer and no evidence that the shipment was roughly handled at the time. The petition did not charge rough handling. Plaintiffs' evidence also shows that such transfer could be made without causing damage, and further, that scalds and bruises and decay, such as found in this shipment at its destination, might likewise be caused as the natural result of the age of the apples and the season of the year. Plaintiffs *Page 1220 
were required to show damage from a cause for which defendant is liable. [Smith Son v. Railroad, 177 Mo. App. l.c. 277; Haake v. Davis, 166 Mo. App. 249, 253.] Upon the specific charge of delay in transit there is no proof that there was any negligent
delay, or that the time of delay resulted in damage to the fruit, or to a loss to plaintiffs on account of a decline in market value during said period. Proof of delay alone is notprima-facie evidence of negligent delay in an interstate shipment. [Rudy v. Cleveland, C.C. St. L. Rd. Co., 278 S.W. 814, 815; McMickle v. Wabash Ry. Co., 209 S.W. 611, 613; Baker v. Schaff, 211 S.W. 103, 104; Smothers v. Chicago, R.I. P. Ry. Co., 15 S.W.2d 884, 886.]
The demurrer to the evidence was properly sustained because plaintiffs, having elected to stand upon specific grounds of negligence, were required to prove their case as alleged. [Yontz v. Mo. Pac. Ry. Co., 174 Mo. App. 482-3-4, 160 S.W. 832; Wentworth Fruit Growers' Assn. v. American Railway Express Co.,1 S.W.2d 1028, 1030; Smith Son v. Railroad, 177 Mo. App. 269, 275, 164 S.W. 132; Robinson v. Bush, 199 Mo. App. 184, 193-4; Rhodes v. Mo. Pac. Ry. Co., 234 S.W. 1026, 1027.]
There is no merit in plaintiffs' insistence that there was evidence tending to show other negligence than that specified and that the petition should be considered as amended to include the negligence so shown; nor is there any merit in plaintiff's proposal that the letter of the claim adjuster is an admission of liability and a circumstance from which an inference could be drawn that defendant realized it was liable. The letter was not an admission of liability and the statement therein that the fruit "might" have been damaged in transfer from one car to another is not an admission that it was so damaged. The letter primarily refers to the efforts of compromise, declines the claim, but still tenders the offer of settlement. No inference of liability arises merely from an effort to compromise. Such efforts are often made in the absence of any liability. The law favors compromise and will not penalize a party who endeavors to effect it.
Plaintiffs do not point out to us any evidence which was improperly excluded or admitted. There was none offered except by plaintiffs and we do not find that any of the evidence so tendered was improperly excluded.
Plaintiffs' request for leave to file an amended petition came too late and there was no error in the action of the trial court in denying the request. Plaintiffs elected to take a voluntary nonsuit with leave to move to set the same aside and thereafter requested leave to file an amended petition which would set up general negligence. No amendment was then permissible. The statute provides for amendments before judgment when they do not "change substantially the *Page 1221 
claim or defense" (sec. 1274, R.S. 1919), and after judgment, as to matters of form and without invading substantial rights, for the purpose of supporting the judgment (sec. 1277, R.S. 1919), and after verdict and judgment (secs. 1550, 1551, R.S. 1919). We do not find in these nor in any case that is called to our attention any authority authorizing the filing of an amended petition after judgment of nonsuit for the purpose of aiding a motion for new trial. There was a total failure of proof of the cause of action alleged. Plaintiffs were in the position of one whose petition stated no cause of action. There is no authority for amendment of the petition at the time. The authorities are to the contrary. [Chaput v. Bock, 224 Mo. 73, 84; Swift v. Fire Ins. Co., 202 Mo. App. 419, 421, id. 279 Mo. 606, 216 S.W. 935.] Further, plaintiffs saved no exception to the ruling of the court upon their request to amend and are not now in position to urge that point as a ground contained in the motion to support the order of the court in granting a new trial. [Manthey v. Kellerman Contracting Co., 311 Mo. 147, 156.]
We recognize the rule that where the court grants a new trial without stating the reason as required by section 1454, Revised Statutes 1919, it will be assumed that the court sustained the motion upon all of the grounds contained in it. We find here and hold that all the grounds assigned in the motion to set aside the nonsuit and for a new trial were insufficient to justify the action of the court. Unless the trial court had authority of its own motion and in the exercise of its plenary power to award a new trial then its action in so awarding a new trial was an excess of authority and erroneous.
This brings us to the question as to whether the court at thetime possessed any power to award a new trial for any reason other than that contained in the motion. It will be observed that the motion was continued from one term of court to the succeeding term, at which time it received attention and was sustained. The judgment term of plaintiffs' case had expired and the time had lapsed within which the court might of its own motion grant a new trial in the exercise of a sound discretion and of that authority with which the trial court is vested over the records and proceedings during term time. In event a motion to set aside nonsuit and for a new trial is continued the grounds upon which the motion can be sustained at a subsequent term must be found within the limits of the motion, absent which the court may not award a new trial sua sponte. Plaintiffs attribute to the trial court the same authority as that vested in an appellate court by section 1514, Revised Statutes 1919, to examine the record and award a new trial which is sometimes done in order to afford a party his day in court and to prevent a failure of justice. A trial court has no such authority after the lapse of the judgment *Page 1222 
term, and we hold that the reason for sustaining the motion in this case was required to be found within the motion, that there was none, and the court awarded a new trial without power so to do.
"A motion to set aside a nonsuit is a motion for a new trial. [McElroy v. Ford, 81 Mo. App. 500.] An order setting aside a nonsuit is an order after judgment. Its effect and purpose are to set aside a judgment that would otherwise be final in the case and to grant a new trial thereof, and therefore it is an order granting a new trial." [Whitfield v. National Electric Light 
Power Co., 271 S.W. (Mo. Sup.) 52, 54.]
"The motion for a new trial was sustained at a term subsequent to the rendition of the judgment, therefore the action of the trial court in sustaining the motion cannot be upheld on the ground that he was exercising his common-law discretion to grant a new trial upon his own motion at the same term the judgment was rendered." [Midwest Nat. B. T. Co. v. Parker Corn Co.,211 Mo. App. 413, 420.]
Many other authorities are to the same effect and a few are offered. [Marsala v. Marsala, 288 Mo. 501, 504; Gray v. Mo. L. 
M. Co., 177 S.W. (Mo. Sup.) 595, 596; Peoples Bank of Holcomb v. Bullock, 216 Mo. App. 492, 497, 270 S.W. 119.]
Plaintiffs urge this court to exercise its authority to grant a new trial so they may have their day in court on the ground that their cause of action is now barred by limitation. We are of opinion that plaintiffs have had their day in court and have had ample time and opportunity to pursue any available remedy. At times untoward events and unusual circumstances arise in the development of a case for which plaintiff is not at fault and on account of which justice may fail in the absence of intervention by the trial or appellate court. Under such circumstances intervention is justified and a request for aid receives attention and a ready response. However, if the situation is invited or in a sense created by the complaining party there is no room for such an appeal. It is inappropriate to urge this court to be keenly alert upon a subject with which plaintiffs were inclined to dally. Over-indulgence results in retrogression, encourages experimental dalliance, and prevents progress. When a party litigant has been accorded fairly his day in court there is no call of justice, crying aloud, that would invoke the extraordinary prerogative of an appellate court to remand a case, in the absence of procedural error, for the purpose of affording him another day to vex his opponent.
As to plaintiffs' appeal. It is the privilege and duty of the trial judge to sign and settle the bill of exceptions. In this case the court heard the evidence on the motion of plaintiffs to set aside and amend the bill of exceptions and overruled the motion. The trial court *Page 1223 
found against the plaintiffs upon the issue of fact and there is no warrant for an interference in its conclusions and no precedent or authority that would justify this court in convicting the trial court of error in the settlement of the bill of exceptions. [Garlichs Agency Co. v. Anderson, 226 S.W. 978.]
It results that the order of the trial court in awarding a new trial in appeal No. 16824 should be reversed and the case remanded with direction to reinstate the judgment of nonsuit; and that the order of the trial court in overruling plaintiffs' motion to set aside and amend the bill of exceptions in appeal No. 16946 should be affirmed. The Commissioner so recommends.Campbell, C., concurs.