[1] This is an action for an accounting in which the plaintiff sought to show that he *Page 133 
had a one-third interest in the profit made by the defendants in the purchase and sale of a farm. The circuit court found that the plaintiff was not entitled to an accounting and he has appealed.
[2] The plaintiff alleges in his petition that he is a real estate broker and agent and that since 1937 the defendants were engaged in speculating in real estate. He states that he and the defendants were to share equally in the profits on the sale of any land that he found on the market and that they agreed to buy. It is alleged that in 1937, pursuant to that understanding, he proposed to them that they buy a tract of 737 1/2 acres known as the Prentice farm, and that the defendants bought the land for $7,407.62. He alleges that his commission amounting to $370.48 was applied to the purchase price. In 1945 the defendants sold the tract for $21,018. The plaintiff prays for an accounting of the profit on the sale and a judgment for one-third of such profit.
[3] The defendants' answer admits that they purchased the farm and sold it for the amount stated, but deny all other averments in the plaintiff's petition touching upon the transaction.
[4] The evidence offered was substantially as follows:
[5] Ewalt testified that prior to the purchase of the Prentice farm by Hudson and Hall he had real estate transactions with Hudson in which they had divided profits and that when he had the Prentice farm for sale he presented it to Hudson for his consideration. Ewalt stated that Hudson said that he would see Mr. Hall and possibly interest him in buying the farm. Later, according to Ewalt, he met with Hudson and Hall and they decided to buy the farm. Testifying further, Ewalt stated:
[6] "It was specifically understood that if the farm was bought that I was to do the work connected with the farm, that is, the negotiating and closing up the deal, and then when it was finally sold, we was to divide the net profits three ways.
[7] "Q. Were you to put up any of the money or not? A. I was not.
[8] "Q. And why not? Was anything said about your financial ability to put it up? A. Yes, I was unable to put it up.
[9] "Q. You were unable to put it up. Now, that was stated between you two men there when you undertook this matter? A. That is right."
[10] Ewalt also testified that he contributed $100 by check for fencing the farm.
[11] There was introduced as an exhibit the following letter from the owner of the farm prior to its purchase by the defendants:
"November 16, 1936.
"Messrs. W. L. Hudson Robert Hall "Lewistown, Missouri "Gentlemen:
 Re: Prentice Farm "R.E. No. 13.
"This will acknowledge to Mr. H. C. Ewalt your offer of November 14th, for the purchase of the above mentioned farm for the sum of $4,000.00 net to us, you to assume the unpaid taxes amounting to approximately $3,500.00 and pay Mr. Ewalt his commission.
"As soon as we have an opportunity of discussing this with the Receiver for the Federal Reserve Life Insurance Company, we will advise you of his reaction, and of our decision.
 "Yours very truly, "A. R. Magruder ______________
 "A. R. Magruder, "Asst. Manager, "Mortgage Loan Department.
"ARM: M.B. "CC Mr. H. C. Ewalt Lewiston, Mo."
[12] In addition to the purchase price the unpaid taxes which the purchasers were to assume amounted to $3,142.62 and Ewalt undertook to negotiate a loan and to arrange for the payment of the taxes.
[13] Dr. Hudson was called to the stand by the plaintiff and he said that he had no contract with Ewalt nor a recollection of any conversation with Ewalt in respect to sharing profits on the deal. He testified:
[14] "I don't remember just the exact conversation — this has been a good many years *Page 134 
ago — but I think he told us he had this farm for sale, had it listed and what it could be bought for; as I remember, he said it was $5,000.00, and pay the taxes, and I remember Mr. Hall said if it could be bought for five, if that was their first offer, it probably could be bought for four. So that was our offer that we authorized him to make when he went to Kansas City, and he said his commission would be five per cent, that was the customary commission."
[15] He stated that they were to pay a commission of $200 to Ewalt on the purchase price, but that the amount was never paid because Ewalt owed them individually more than that at all times. Hudson stated that he had been engaged in real estate transactions with the plaintiff wherein the two of them had shared the profits and that in June of 1944 they settled their partnership account. The first of these deals, according to Hudson, was in 1938.
[16] Defendant Hall testified that Hudson called him and told him that Ewalt was agent for the sale of the Prentice farm and that there was no agreement such as Ewalt testified to respecting a division of the profits. The only agreement he had was with Hudson and the two of them purchased the farm which Ewalt was seeking to sell. He stated that he never at any time purchased land with Hudson and Ewalt.
[17] The plaintiff admitted that he was indebted to Hall and it is evident that both Hall and Hudson individually had loaned him money from time to time.
[18] There appears to have been considerable confusion at the trial as to the nature of the action and the relief sought. The court heard the case in February of 1947 and reopened it for further testimony in June, 1948, thereafter finding that the plaintiff was not entitled to an accounting.
[19] The plaintiff pleaded and sought to prove a joint adventure or joint enterprise as it is sometimes called. Such a legal relationship is the "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation". 48 C.J.S., Joint Adventures, § 1, page 801; Neville v. D'Oench, 327 Mo. 34,34 S.W.2d 491; Hobart-Lee Tie Co. v. Grodsky, 329 Mo. 706,46 S.W.2d 859; Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562. A joint adventure is in the nature of a partnership and a member holding the profits of such venture is in fiduciary relationship to the other members and an action for an accounting will lie against him. Zickel v. Knell, 357 Mo. 678, 210 S.W.2d 59, 3 A.L.R.2d 1304; Neville v. D'Oench, supra.
[20] The court below heard evidence to determine whether or not the defendants were liable to render an accounting to plaintiff. Without this preliminary step a defendant might unfairly be made to account when the plaintiff is not entitled to it. The procedure in a suit for accounting requires the court to first determine whether or not the plaintiff is entitled to an accounting and then to enter an interlocutory decree so finding or a decree denying the relief sought. This permits the defendant to contest the right of the plaintiff to the accounting that he seeks. State ex rel. Minnesota Mut. Life Ins. Co. v. Denton, 229 Mo. 187, 129 S.W. 709, 138 Am.St.Rep. 417; Patton v. Goodson, 238 Mo.App. 439, 183 S.W.2d 333; Buffington v. Green, 221 Mo.App. 695, 285 S.W. 531.
[21] The main contention of the plaintiff is that the evidence established a joint adventure and profit-sharing agreement between the parties and that the court erred in holding to the contrary. In passing upon this assignment we review the record and reach our own conclusion as the case is an action in equity. Bussinger v. Ginnever, Mo.App., 213 S.W.2d 230; Hydesburg Common School District v. Rensselaer Common School District, Mo.App., 218 S.W.2d 833; Polich v. Hermann, Mo. App., 219 S.W.2d 849. Of course, deference is accorded to the findings of the trial court where there is conflicting verbal testimony involving the credibility of witnesses, unless the appellate court is satisfied that such findings are against the weight of the evidence. Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461; Kingston v. *Page 135 
Mitchell, Mo.Sup., 117 S.W.2d 226; Dolan v. Truck Equipment Co., 357 Mo. 1034, 212 S.W.2d 438.
[22] A joint adventure can only arise by contract, but it may be established without any specific or formal agreement. Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562. The plaintiff's testimony as to the contract is quite positive. He asserts that a division of the profits between the three was "specifically understood." He goes further to say "that the deal was to be handled on the same basis that former deals were handled between Dr. Hudson and I." However, the only deals testified to by Hudson occurred after the purchase of the Prentice farm and Hudson stated that Ewalt was only to receive a commission on the transaction in question. Hall testified that he had no agreement with Ewalt and was in none of the deals between Hudson and Ewalt.
[23] In addition to these flat denials of the claim asserted by the plaintiff, part of plaintiff's own testimony respecting a conversation with Hudson is as follows:
[24] "Q. What proposition, if any, did Doctor Hudson and Mr. Hall make to you with respect to getting the loan, the $7500 at Kansas City? What did they say to you? A. I don't know whether Mr. Hall was present or not, but Doctor Hudson made the suggestion. He said, `If we could get this loan and get our money back and get everything cleaned up, instead of waiting to sell that farm, we will make you a deed to an undivided third interest in that farm."
[25] "Q. Now, you did not make the loan, I believe, it was not procured? A. No."
[26] If it was understood that the plaintiff owned a one-third interest in the transaction, why then should his title be contingent upon getting a loan sufficient to cover the entire cost of the farm? The testimony does not seem to support his contention that the deal as consummated was a joint adventure.
[27] However, without regard to any inconsistencies in the plaintiff's testimony, the evidence presents an irreconcilable conflict, for both defendants denied that they entered the contract. Apparently the trial judge believed the defendants and as he was in a better position to determine the credibility of the witnesses we defer to his judgment. Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461; Dolan v. Truck Equipment Co., 357 Mo. 1034, 212 S.W.2d 438; Wallace et al. v. Shanks, Mo. Sup., 221 S.W.2d 873; Scheer v. Gerleman, Mo.Sup., 221 S.W.2d 875.
[28] It is contended that Hall's assertion that he had no agreement with Ewalt respecting a division of the profit is a mere conclusion that we are to ignore in determining the case. The transactions between the parties were loosely conducted and extended back over a period of years, particularly as between Hudson and Ewalt. The witnesses were all testifying about a verbal transaction that had taken place ten years prior to the trial. Under such circumstances they could not be expected to relate the exact conversations, for doubtlessly their memories were dimmed by the lapse of time. Plaintiff having testified before defendant Hall frequently used the term, "it was understood", which stated a conclusion and Hall in testifying denied that such an understanding existed. He could not refute the statement by relating the conversation on the subject if no such conversation took place and it was permissible for him to deny that he entered into an agreement that the plaintiff said existed between them.
[29] There was some testimony that defendants had offered to pay plaintiff the commission of five per cent on the purchase price of the farm, including as part of the purchase price the sum paid by them to clear up back taxes. This offer was made after the sale of the land in an attempt to compromise with the plaintiff and it cannot be considered as any admission of liability on the part of the defendants. Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S.W.2d 691; Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054; Inzerillo v. Chicago, B. Q. R. Co., 225 Mo.App. 1213,35 S.W.2d 44.
[30] It may be that the plaintiff is entitled to a commission on the sale of the farm to the defendants. Since that question was *Page 136 
never tried and is not before us, the case under consideration does not preclude him from asserting any such claim that he may have. He was not, however, entitled to an accounting of the profits on the sale of the farm, which is all that he seeks here, and the court did not err in denying the petition for an accounting.
[31] It is the recommendation of the Commissioner that the judgment be affirmed.