Ella **HERBERT**, Appellant,

v.

Lawrence **HERBERT**, Respondent.

No. 7319.

Springfield Court of Appeals.

Missouri.

Nov. 15, 1954.

Lincoln, Lincoln, Haseltine, Forehand & Springer, Springfield, for appellant.

Stemmons & Stemmons, Mount Vernon, for respondent.

McDOWELL, Presiding Judge.

Ella Herbert, plaintiff, prosecutes this appeal from a judgment of the Circuit Court of Stone County, Missouri, in her action for divorce and accounting.

The suit was in two counts. Count I was an action for divorce and alimony based upon general indignities.

Count II asked for an accounting and is as follows:

"That shortly after the marriage, plaintiff and defendant purchased a farm in Stone County, Missouri; that part of plaintiff's money and part of defendant's money went into the purchase thereof and same was paid for by both plaintiff and defendant, title being taken in their names; that thereafter both plaintiff and defendant worked on said farm, plaintiff giving her attention thereto and furnishing a number of cattle; and through their joint efforts through the years, that is, from 1944 to the present time, accumulated considerable livestock and tools; that in the last years of their married life, defendant has sold numbers of stock from the farm and has failed to place the money therefrom in their joint bank account and failed to account for plaintiff's one-half thereof.

"2. Plaintiff further states that on or about September, 1952, defendant sold most of the stock owned jointly by plaintiff and defendant on said farm, confiscated the money to his own use and left this plaintiff; that she verily believes that said stock was worth Five to Six Thousand Dollars ($5,000.00 to $6,000.00); that she does not know the amount which defendant secured from the sale of said stock and that defendant also sold all of the tools which were owned jointly by plaintiff and defendant and has confiscated that money to his own use. Plaintiff does not know what defendant secured from the sale of said tools.

"3. Plaintiff further states that she has no adequate remedy at law.

"Wherefore, Plaintiff prays the Court to require defendant, under Count Two of this petition, to make an accounting for monies obtained from the sale of stock and tools from said farm owned jointly by plaintiff and defendant and ascertain the reasonable value of said stock and tools so confiscated by the defendant, and to render a judgment in favor of plaintiff against defendant in the amount of one-half of the value thereof, and for the costs herein laid out and expended and for such other

and further relief as to the Court may seem just and proper."

The issues in this appeal pertain only to the second count. Defendant's answer to the second count is a general denial.

The judgment of the trial court is as follows:

"It is further ordered, adjudged and decreed that Judgment be, and is hereby awarded Defendant, and against Plaintiff on Count II of Plaintiff's petition."

The evidence shows that prior to plaintiff's marriage to the defendant, August 12, 1944, she lived with her mother on a 184 acre tract of land in Stone County; that about a year after the marriage plaintiff and the defendant purchased this farm for a consideration of $8,000, defendant paying $4,250 and plaintiff paying $3,750, taking title in their joint names.

At the time of marriage, plaintiff owned 19 head of cattle, 16 head of sheep and 1 horse and defendant bought and brought to the farm 6 head of cows. The parties were separated in 1952.

During their married life they operated the farm, bought and raised livestock and sold a part thereof. Defendant did all the selling of the livestock from the farm, receiving payment by check in his name which, plaintiff testified, he deposited in their joint bank account but stated that it did not always stay there.

The evidence was undisputed that during this farming enterprise considerable repairs and improvements were made, including the stuccoing of the house, re-roofing it, taking out partitions and remodeling it inside, including the addition of a bathroom; that an old barn was torn down and a new one built, including a cowshed; some new fences were built and old ones repaired, some clearing and sprouting was done by defendant. Some other improvements were also made by the defendant.

Plaintiff testified that she paid for some of these improvements out of her individual funds and that all of the other improvements were paid from funds received from money obtained from sale of livestock.

The evidence shows that defendant employed help to operate the farm; that he was in bad health, being a diabetic and suffering from heart disease. He was 65 years of age and, the testimony showed, he would work on the farm in the morning but in the evening he would go to town and play pool.

Defendant drew a pension from the government for disability incurred during World War No. I; plaintiff admitted she was getting $25 a month out of this $75 pension. Defendant also received social security.

The evidence shows that plaintiff did the house work, worked in the garden, milked two cows and had some chickens from which she possibly made $20 a month above expenses and used the money.

It is admitted that just prior to the separation, in 1952, defendant sold 40 head of stock cattle, being all the stock cattle on the place, for $4,511 and 2 horses for $90; that he purchased an automobile for $2,000 and, plaintiff said, a suit of clothes, and defendant testified he paid the balance of the money for personal indebtedness of his, except $606 which he deposited in the bank account at Crane, Missouri. Plaintiff testified that she got only $500 of this money; that defendant checked out $100 of it. It is not clear whether there was other money in this account at the time of the separation or not but plaintiff admitted taking all of the bank account left and closing the account.

The evidence shows that at the time of the separation there was left on the farm for plaintiff 5 cows, 1 calf and 32 head of sheep, which plaintiff has disposed of and kept the proceeds.

Plaintiff testified that defendant also sold approximately $200 worth of farm tools, some of which were hers and on the farm at the time of the marriage and the balance purchased during their married life from the earnings of the farm.

She also testified that when defendant left he took everything he could get his hands on, including quilts, pillow cases, sheets, and food, etc., which she had put up or had received from her mother, all being her individual property.

Plaintiff testified that she knew defendant was going to sell the stock cattle; that she told him to leave 11 heifers, a roan cow and calf and one Jersey. She gave this answer: "A. I agreed that he sell the rest of them."

Plaintiff admitted that since the separation she had been operating the farm, had collected $101 pasture rent and sold $240 grass seed.

Defendant's testimony is that all the property he owns is the automobile he purchased, his government pension and social security; that he earns a small amount of money from selling Bibles but that he can no longer farm because of his diabetic and heart conditions.

Plaintiff testified they made a net profit of about $2,000 a year off the farm. The only matter in issue, however, under the pleadings, is an accounting for monies obtained from the sale of livestock and tools.

Plaintiff relies upon two assignments of error for reversal in this case.

Under the first assignment of error plaintiff contends that the trial court erred in failing to find that one-half of the proceeds of the sale of the jointly owned personal property was plaintiff's separate property.

Under this assignment of error plaintiff cites Section 451.250 RSMo 1949, V.A.M.S., which reads as follows:

"All real estate and any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture, by gift, bequest or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or has grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband.

"This section shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife; provided, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own use and benefit, * * *."

Dollins v. Robinson, Mo.App., 236 S.W. 1063, cited by plaintiff, was decided by this court. The facts in the case are that plaintiff's husband was addicted to drink and the whole weight and burden of caring for the family was on the wife; that they lived on a rented farm and the wife did all of the work, both household, raising livestock and the crops grown on said farm; that she, personally, did all the buying, selling and trading and was the moving spirit of the family; that the property involved in the replevin suit was admitted by the husband to belong to his wife. The court found that the evidence showed that the property involved was the direct result of the labor of the wife and was governed by the provisions of the statute under the term of wages of her separate labor which brought it within the rule announced in Otto F. Stifel's Union Brewing Company v. Carroll, Mo., 223 S.W. 732, which holds that where business is carried on by the wife, and she was permitted to handle and use the proceeds derived from it as her own, the law will give it to her under the statutes.

In Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 28, the law is stated:

"* * * The basic principle of the new Code provisions is just the opposite. The aim is to determine what are the controversial issues before the trial begins, and limit the trial to them. * * * But

the pleadings continue to be of the greatest utility in defining the issues of a case. And it is not to be understood that the petition in stating plaintiff's claim has lost its usefulness as a means of arriving at the primary objectives of the Code. On the contrary, it is to be understood that the petition is to be of the same usefulness as before, or of more usefulness than before, in plainly stating the facts upon which the plaintiff relies as showing that he is entitled to recover. * * *"

In Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, 230, it is stated:

" * * * Since the office of the pleadings is to define and to isolate the issues to those controverted so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits, the absence of a formal pleading traversing the allegations of the answer should not be considered prejudicial to a party defendant who understood what issues were being tried."

■ We submit that Count II of plaintiff's petition did not plead an action for recovery of the wife's separate property. The pleading states that plaintiff and defendant purchased a farm and each paid a part of the purchase price and title was taken in their joint names. Under the law this farm was held by the entirety. The pleading states that thereafter both plaintiff and defendant worked on the farm, plaintiff giving her attention thereto and furnishing a number of cattle; that by their joint efforts through the years they accumulated livestock and tools and, during the last years of their married life, defendant sold numbers of stock from the farm and failed to deposit the money in their joint account. The pleading specifically states that the stock and tools sold by defendant were personal property owned jointly.

The prayer of the petition is that the court make an accounting for sale of stock from the farm owned jointly by plaintiff and defendant and render judgment for plaintiff.

Plaintiff cited the statute, the provisions of which we have herein set out, which clearly shows that her pleadings do not present the issue of an action to recover for the taking of plaintiff's separate property. The record of the trial of the case convinces us that the cause was not tried upon the theory contended for under this assignment of error. We find against plaintiff on this contention.

The second contention made under the first assignment of error is that the trial court erred in failing to find that one half of the income from the joint enterprise belonged to plaintiff as her separate property.

Under this assignment of error plaintiff, again, cites section 451.250 RSMo 1949, V.A.M.S. This section does not aid plaintiff in her contention that there was a joint enterprise or joint adventure. If plaintiff had based her cause of action upon the ground that at the time of her marriage she owned 19 head of cattle, 16 head of sheep and 1 horse, together with certain farming tools, and that the defendant, without her consent, had sold said property and used the money therefrom, she certainly would be allowed to recover. Under the married woman's act plaintiff was entitled to her individual property at the time of the marriage and the increase therefrom after the marriage and to any property that came to her as a result of her own efforts or from inheritance as set out in the statute herein. Plaintiff did not base her cause of action upon that theory and it was not tried upon that theory. If she has pleaded a cause of action it must be under joint adventure. We will consider the cause under this contention.

Plaintiff cites Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562, to sustain this contention.

On page 571 of 40 S.W.2d of the opinion the court states the law:

"There is an abundance of case law on the subject. A 'joint adventure' has been defined as an association of two or more persons to carry out a single business enterprise for profit, for which purpose they

combine their property, money, effects, skill, and knowledge. * * * It can arise only by contract or agreement between the parties. * * * But joint adventure may be established without any specific formal agreement to enter into a joint enterprise; it may be implied or proven by facts and circumstances showing such enterprise was in fact entered into. * * * There must be some active participation in the enterprise, some control over the subject-matter thereof or property engaged therein. * * But it may be said of the great majority of such agreements that they do not point out precisely what each party is to do under them. * * * And the contract is not avoided for indefiniteness because the minor details are not fully established. * * * Decisions defining and describing partnerships are not controlling upon the question of whether the parties to the agreement were joint adventurers. * * * But rights as between the adventurers are governed by the same rules that govern partnerships. * * *"

We shall not comment further on the two old cases cited by plaintiff on this matter but will refer to the last decisions of the Supreme Court.

In Scott v. Kempland, Mo.Sup., 264 S.W. 2d 349, 354, Judge Dalton, speaking for the court, said:

"As stated, plaintiff's cause of action proceeds upon the theory of a joint adventure, to wit, an agreement between plaintiff and defendants for the cooperative purchase and sale of the described real estate for the purpose of making a profit and for an equal division of the net profits between them. 'A joint adventure has been aptly defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, or as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge.' 48 C.J.S., Joint Adventures, § 1, p. 801; Neville v. D'Oench, 327 Mo. 34, 34 S.W.2d 491, 503; Denny v. Guyton, 327

Mo. 1030, 40 S.W.2d 562, 570; State ex rel. McCrory v. Bland, 355 Mo. 706, 197 S.W.2d 669, 672, 168 A.L.R. 929; Brooks v. Brooks, 357 Mo. 343, 208 S.W.2d 279, 283, 4 A.L.R.2d 826; Stouse v. Stouse, Mo.App., 260 S.W.2d 31; Ewalt v. Hudson, Mo.App., 223 S.W.2d 132.

"It is well settled that a joint adventure can only arise by contract, but the contract may be established without proof of any specific or formal agreement. The contract may be implied and inferred, in whole, or in part, from the acts and conduct of the parties and from proven facts and circumstances showing that such enterprise was in fact entered into. * * * '"Whether the parties to a particular contract have thereby created, as between themselves, the relation of joint adventurers, depends upon their actual intention, which is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts." * * * "Any person legally competent to contract may become a party to a joint adventure." * * * "In the absence of statutory provisions to the contrary the contract may be oral or written. * * *. * The agreement is not rendered invalid by any uncertainty in the duration of the business or indefiniteness in the minor details of the adventure. * * * The mutual promises of the parties to a joint adventure are a sufficient consideration to support their contract." * * * "Within the scope of the enterprise they stand in a fiduciary relation each to the other, and are bound by the same standards of good conduct and square dealing as are required between partners." ' * * *

"The preponderance of the evidence is necessary and sufficient to prove a joint adventure. * * *"

On appeal from a decree in a suit for accounting, the court of appeals reviews the record and reaches its own conclusion, as the case is a suit in equity, but the court will accord deference to findings of the trial court where there is conflicting verbal testimony involving credibility of witnesses, unless the court of appeals

is satisfied that such findings are against the weight of the evidence. Ewalt v. Hudson, Mo.App., 223 S.W.2d 132.

In the case at bar the trial court found against plaintiff on Count II. He gave no reasons for his findings. Considering the whole record the testimony is undisputed that defendant lived in the home of plaintiff's mother prior to the marriage. He testified that he and the plaintiff had a joint bank account prior to their marriage and prior to their acquiring the farm question as tenants by the entirety. Plaintiff testified that she possessed livestock and farming tools prior to her marriage with defendant; that after the marriage defendant purchased and brought there six head of cattle.

The evidence before the trial court is undisputed that these parties operated the 184 acres of land owned by the entirety from 1944 to date of separation in 1952, a period of approximately eight years. They operated this farm as man and wife. Plaintiff's testimony is not disputed that during the eight years they had a joint bank account and sold livestock from the farm and, as she says, the checks were made to defendant and deposited in the bank account but the money did not always stay there. The testimony shows that defendant did all of the buying of the livestock during their married life, which, plaintiff says, was two or three head each year, and that he did all of the selling. We think the testimony establishes the fact that considerable improvements were made on the farm during their married life and that most of such improvements were paid from the income of the farm.

Plaintiff testifies that she milked two cows, raised some chickens and sold eggs, the proceeds of which she used to sustain herself. She testified that the farm produced a net profit annually of about $2,000 but there is no testimony as to where these profits, if any, went. There was testimony that defendant had two or three other bank accounts but there was no showing that he ever deposited any of the proceeds obtained from the farming operations in these accounts.

The admitted testimony was that defendant was a veteran of World War I, 65 years of age, was a diabetic and received a pension from the government of $75 per month, plus social security. The testimony also shows that in the last of their married life plaintiff received $25 of defendant's pension. There is no showing where any of this money was deposited.

Plaintiff's testimony is undisputed that the livestock on the farm and the tools used thereon were accumulated during the years from the proceeds of the farm and by raising of the cattle. At the time of the separation the defendant, with the knowledge of plaintiff, sold 40 head of cattle for $4,511 and farm tools which, plaintiff said, were reasonably worth $200. There was other testimony about food and quilts, etc., but the pleadings do not cover these items and we will not consider them. Plaintiff did testify that she told defendand, at the time he was selling the cattle, to leave 11 heifers, a roan cow and calf and a Jersey. She stated she agreed that he sell the rest of them. The testimony shows that defendant purchased an automobile with the money received, deposited $606 in the joint bank account and, he says, spent the balance of the money for personal debts that he owed. It is not clear whether plaintiff had acquired these debts for money spent on the farm or just how the money was used but the testimony is undisputed that all the property defendant has is his interest in the farm, held by the entirety, the automobile purchased, his government pension and social security.

■■ It is well settled that a joint adventure can only arise by contract; that the burden of showing this contract by the preponderance or the greater weight of the testimony was upon plaintiff. Such contract may be either oral or written. If the parties intended to enter into the business enterprise of farming for profit and combined their property, money, effects and skill, then a contract might be inferred from the acts and conduct of the

parties showing that such enterprise was in fact entered into without proof of any specific or formal agreement.

Under the facts in the case at bar neither party testified to any specific agreement between them and if there were such a contract of joint adventure it must be inferred from the acts and conduct of the parties in carrying on their farming operations.

█ Plaintiff exercised no control over the farming operations. The defendant did all of the buying and selling of the livestock and, from plaintiff's brief and contentions before this court, it is really difficult to tell whether plaintiff seeks to recover for the taking of her property owned prior to her marriage or the increase from her property so owned or whether she relies upon a contract of joint adventure. Under the evidence offered, we believe that the judgment of the trial court should be affirmed because plaintiff failed to meet the burden of proof showing joint adventure.

Judgment affirmed.

STONE, J., concurs.